HARRIS I. STEINBERG (Bar No. 89288)
LEVINE, STEINBERG, MILLER & HUVER
550 W. "C" Street, Suite 1810
San Diego, California 92101
Phone:(619) 231-9449
Fax: (619)231-8638

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDER SUPPORT SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY and DOES 1 - 20, Inclusive,<br><br>Defendant. | CASE NO. 08cv0848-WQH(BLM)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: September 2, 2008<br>TIME: 11:00 a.m. (Oral Argument)<br>CRTRM: 4 - Hon. William Q. Hayes |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | STATEMENT OF FACTS. | 1 |
| III. | PROMISE OF EPL "COVERAGE" | 2 |
| IV. | DEFENDANT'S EXCLUSION B IS NOT APPLICABLE | 6 |
| | A. Pay Cut In Salary Loss | 6 |
| | B. Exclusion B Is Illusory. | 7 |
| | C. Bonus Claims Were Not Necessarily "Earned Wages" | 7 |
| | D. FLSA Exclusion Is Not Plain, Clear Or Conspicuous | 8 |
| V. | DEFENSE COST REIMBURSEMENT WAS EXPRESSLY PROMISED FOR BREACH OF CONTRACT CLAIMS | 10 |
| VI. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page

CNA Casualty v. Seaboard Surety Co.
176 Cal.App.3d 598 (1986) . . . . . . . . . . 8

Gray v. Zurich Insurance
65 Cal.2d 263 at 276 (1968) . . . . . . . . . . 5

Montrose v. Superior Court
6 Cal.4th 297 (1993) . . . . . . . . . . 8

Ponder v. Blue Cross
145 Cal.App.3d 709 (1983) . . . . . . . . . . 9, 10

OTHER AUTHORITY

California Evidence Code §500 . . . . . . . . . . 6

California Labor Code §1178 . . . . . . . . . . 9

## I.

## SUMMARY OF ARGUMENT.

Lender Support Systems, Inc. (LSSI) requested its insurer, Philadelphia Indemnity Insurance Company (PIIC) to reimburse LSSI for its legal expenses incurred in an Employment Practice Liability claim (**EPL**) made against LSSI. Philadelphia Indemnity Insurance Company acknowledged the claim and refused to pay any of LSSI's legal defense expenses based on a single exclusion, Exclusion B (Fair Labor Standards Act).

PIIC did not dispute the fact that the claims made against LSSI by its former employee were all claims that were "included" within the scope of the "insuring" or coverage provisions of the Employment Practices Liability insurance policy. PIIC's only reason for denying LSSI's claim for benefits is that Exclusion B allegedly eliminates the coverage provided in the insuring clauses of the policy. In essence, there is no dispute that LSSI's claim falls within the **EPL** "coverage" provisions; the only question is whether PIIC's Exclusion B actually applies to this claim. LSSI's burden of proving or establishing the existence of a "covered" claim has been met. Defendant PIIC must carry its burden of proof in showing: (1) that its purported exclusion actually applies to this claim, and (2) that the Exclusion B is plain, clear and conspicuous.

LSSI contends that Exclusion B does <u>not</u> apply to the underlying **EPL** insurance claim and that Exclusion B is <u>not</u> plain, clear or conspicuous and, therefore, defendant PIIC should have provided insurance benefits to LSSI.

## II.

## STATEMENT OF FACTS.

Lender Support Systems, Inc. (LSSI) was insured by PIIC under an insurance policy that was entitled Private Company Protection Plus. See attached Exhibit 1. The policy provides three types of liability coverage to LSSI: Directors and Officers & Private Company Liability (D&O), Employment Practices Liability insurance (**EPL**) and Fiduciary Liability insurance. The coverage involved in this matter is the **EPL** coverage. To be sure, EPL coverage is very specific coverage and is limited to employment liability claims/risks that LSSI might suffer.

The **EPL** coverage promises to insure LSSI for up to $1,000,000 of liability LSSI might incur due to employment-related claims, including reimbursement of legal defense costs incurred by LSSI, up to the same single limit of $1,000,000.

LSSI was sued by a former employee (Sonja D'Anneo) and in her lawsuit she alleged numerous matters which were within the scope of the insuring clauses of the **EPL** coverage. See Exhibit 2. PIIC was notified of the D'Anneo suit and LSSI's request for "reimbursement" of legal expenses.

On December 13, 2007, PIIC had its retained coverage counsel (Sedgwick, Detert, Moran & Arnold) respond to LSSI's claim, see Exhibit 3. PIIC did not take the position that the D'Anneo claim/suit did not qualify under one or more of the "insuring clauses" of the **EPL** coverage. Instead, the denial was made on the basis of a single exclusion, Exclusion B. Exclusion B is an amendment to the exclusion section of the policy. PIIC's reliance on Exclusion B is further limited to just the Fair Labor Standards Act, see Exhibit 3. By its own terms Exclusion B does not apply to the claims made in the D'Anneo lawsuit. The suit never claimed any "minimum wage or overtime" dispute against LSSI. Exclusion B as it relates to Fair Labor Standards Act (FLSA) claims only relates to these areas. FLSA doesn't cover breach of contract disputes. As an exclusion, it is to be read narrowly and cannot be applied to a covered claim unless the exclusion is plain, clear and conspicuous. Exclusion B by its own terms does not preclude LSSI's right to "defense cost" reimbursement promised in the policy, nor is it plain, clear or conspicuous.

The **EPL** coverage in this policy is different from most standard liability insurance policies. This policy requires the insured to provide its own defense counsel, incur the legal expense and seek reimbursement from PIIC. LSSI is entitled to be reimbursed defense costs based on the policy language, regardless of Exclusion B.

**III.**

**PROMISE OF EPL "COVERAGE."**

_____The **EPL** coverage promises protection against loss, in extremely broad terms, for "actual or alleged" losses arising from 17 specific **EPL** events an employer might be sued over:

**PART 2**

**EMPLOYMENT PRACTICES LIABILITY INSURANCE**

I. INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured, Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act.**

II. DEFINITIONS

A. **Employment Practice Act** means any actual or alleged:

1. wrongful dismissal, discharge or termination of employment
2. breach of a written or oral employment contract or implied employment contract;
3. employment related misrepresentation;
4. wrongful failure to promote;
5. violation of employment discrimination laws (including harassment);
6. wrongful deprivation of a career opportunity;
7. employment related wrongful discipline;
8. negligent employee evaluation;
9. employment related invasion of privacy;
10. employment related defamation (including libel and slander);
11. sexual or workplace harassment of any kind;
12. constructive discharge of employment;
13. employment related retaliation;
14. employment related humiliation;
15. wrongful demotion;
16. negligent reassignment;
17. violation of any federal, state or local civil rights laws. (Emphasis added.)

EPL Policy, Exhibit 1, p. 3 of 19.

While PIIC never stated which **EPL** offenses applied to the D'Anneo complaint, it is clear that the complaint should be reasonably read to "allege" offenses under **EPL** coverages 2, 3, 8 and 16 based on allegations in the D'Anneo complaint that variously asserted:

5. LSSI provided Plaintiff with a written contract proposal calling for the payment of substantial bonus money that was represented to be achievable and expected assuming Plaintiff performed in a reasonably satisfactory manner. LSSI promised to pay Plaintiff an additional bonus equal to 10% of any sales generated by Plaintiff, projected to be at least $10,000 of additional bonus money.

6. Plaintiff relied on LSSI's promise to pay achievable bonus money in agreeing to join LSSI and to take a pay cut in salary from her former employer. LSSI knew and understood that Plaintiff was taking a reduced salary and was expecting and relying on the availability of bonus money as part of her compensation package.

7. LSSI failed to define the goals and expectations of Plaintiff as required under the express terms of Plaintiff's employment. And soon after her employment began, LSSI elected to change Plaintiff's job scope from primarily an operations manager, which provided a substantial opportunity to generate new-client sales, to a client retention and account manager, which focused on retaining and generating revenue from existing clients.

8. Shortly thereafter, Plaintiff met with Mr. Burch to discuss the final evaluation. At the time of this meeting, LSSI had only paid Plaintiff approximately $30,000 of her projected $100,000 bonus money. During that meeting, Plaintiff expressed her dissatisfaction with the bonus that had been paid, and insisted that at absolute minimum she should receive the additional $20,000 performance bonus. Plaintiff further explained her belief that it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised. Mr. Burch offered to pay Plaintiff an additional $12,500 of the performance bonus during this meeting, but still refused to pay the sales bonus.

10. After the meeting with Mr. Burch, Plaintiff felt extremely upset over the bonus money she had been promised, and felt it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales from existing clients after being assigned to client retention. Nevertheless, Plaintiff continued performing her work at an extremely high level.

11. LSSI continued to drag its feet on the remaining $12,500 bonus money promised to Plaintiff during her meeting with Mr. Burch. Plaintiff thereafter decided that she had no choice but to leave LSSI as she had not been treated fairly and not been paid monies she was owed. Plaintiff believed that she had been taken advantage of, both initially, and with respect to the false promises made to her during her performance review. (Emphasis added.)

D'Anneo Complaint, Exhibit 2, ¶¶5 - 11.

PIIC apparently understood that allegations in the complaint would support **EPL** claims of: 2. breach of a written or oral employment contract; 3. employment related misrepresentation; and/or 16. negligent reassignment. The denial letter never asserted that a covered **EPL** claim did not occur, it only asserted Exclusion B as the basis for the denial (Exhibit 3).

To be sure, it is the allegations that must be looked to and not the "title" that the pleader puts on the cause of action. Gray v. Zurich Insurance, 65 Cal.2d 263 at 276-77 (1968) makes it

clear that an insurer must provide coverage where it learns of "facts" that give rise to the "potential" for coverage even if the "theories" pled are outside of the coverage:

> Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. Although an earlier decision reads: "In determining whether or not the appellant was bound to defend . . . the language of its contract must first be looked to, and next, the allegations of the complaints . . ." (*Lamb v. Belt Casualty Co., supra*, 3 Cal.App.2d 624, 630), courts do not examine only the pleaded word but the potential liability created by the suit. Since the instant action presented the potentiality of a judgment based upon nonintentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset.
>
> To restrict the defense obligation of the insurer to the precise language of the pleading would not only ignore the thrust of the cases but would create an anomaly for the insured. Obviously, as *Ritchie v. Anchor Casualty Co., supra*, 135 Cal.App.2d 245, points out, the complainant in the third party actions drafts his complaint in the broadest terms; he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint and of the plasticity of modern pleading, <u>we should hardly designate the third party as the arbiter of the policy's coverage.</u>
>
> <u>Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured and other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy</u>. In the instant case the complaint itself, as well as the facts known to the insurer, sufficiently apprised the insurer of these possibilities; hence we need not set out when and upon what other occasions the duty of the insurer to ascertain such possibilities otherwise arises. (Emphasis added.)

The factual allegations of the <u>D'Anneo</u> complaint readily supported the "potential" for breach of contract claims, misrepresentation claims and claims that she was negligently reassigned. Ms. D'Anneo's allegations at paragraph 6 lines 18 - 19 demonstrate that she was <u>alleging</u> a potential damage claim based on losses she allegedly suffered as a result of "taking a pay cut in salary from her former employer." A "wage cut" loss is not an FLSA overtime or minimum wage loss claim. The titles used in the complaint do not eliminate coverage for damages the **EPL** policy agreed to insure.

Damages resulting from "taking a pay cut" based on any one of the enumerated **EPL** claims (breach of written contract, employment related misrepresentation or negligent reassignment) would be damages that are not a loss of under defendant's Exclusion B (FLSA) or "Earned Wages."

**IV.**

**DEFENDANT'S EXCLUSION B IS NOT APPLICABLE.**

PIIC's denial is based entirely on Exclusion B. If Exclusion B does not apply to all of the damages that were alleged or potentially being claimed, then PIIC's denial was incorrect and LSSI would be entitled to coverage under the **EPL** coverage it purchased. More importantly, it is the insurer who bears the "burden of proof" in proving that the exclusion unquestionably applies. See California Evidence Code §500.

**A. Pay Cut In Salary Loss.**

_____Money that Ms. D'Anneo alleges she lost by taking a "cut in salary" from her earlier employer would be consequential damages in both a breach of contract and resulting damages in a misrepresentation claim, both are covered losses in the policy. A "cut in salary" damages would not be "Earned Wages" as defined in PIIC's Exclusion B:

> Part 2 (**EMPLOYMENT PRACTICES LIABILITY INSURANCE**), section III (EXCLUSIONS), item B is replaced by:
>
> B. for any actual or alleged violation(s) of any of the responsibilities or duties imposed by the Employee Retirement Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by an **Insured(s)** from any **Employee(s)**, including, but not limited to, (I) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported **Employee(s)** were improperly classified or mislabeled as "exempt."
>
> Part 4 (**COMMON POLICY DEFINITIONS**), is supplemented by:
> **Earned Wages** means wages or overtime pay for services rendered. (Emphasis added.)

Earnings that Ms. D'Anneo might have obtained in some other job with a different employer are compensatory damages for a lost opportunity, but they are not earnings for "services rendered." Nowhere in Exclusion B is there any reference to reliance damages, resulting damages or suffering a "pay cut" caused by either a breach of contract or relying on a negligent misrepresentation in an **EPL** claim. Damages sustained by taking a voluntary "pay cut" could not

be viewed as "earned wages" as defined by PIIC's Exclusion B, as it would not involve pay for services rendered. This loss would relate to services that Ms. D'Anneo did not render. Any such claim made against LSSI would not be a claim for earned wages or earned bonus money. The "cut in salary" damages would be damages, but not "earned wages" owed by LSSI. PIIC's reliance on Exclusion B was misplaced as there is nothing in Exclusion B that relates to "non earned" wages. PIIC's denial is without basis because Exclusion B did not completely eliminate all of Ms. D'Anneo's damage claims, nor was there an FLSA claim made.

**B. Exclusion B Is Illusory.**

_____The policy grants coverage on an express basis for Employment Practices Liability. The one claim that a reasonable employer would expect to be covered in an employment practices policy is a claim relating to alleged "misrepresentation" of an employment contract and/or a negligent reassignment. Ms. D'Anneo claimed that due to LSSI's change in her employment, she was denied the opportunity to earn "income." An opportunity to earn income is not a claim for "Earned Wages" as defined by Exclusion B, which by definition only relates to "services rendered." Further, a wage cut from a prior job is a loss from services not rendered.

Defendant's assertions in its denial letter, Exhibit 3, tries to sweep all alleged losses into the Fair Labor Standards Act (FLSA), which is not defined or explained in the policy and which PIIC attempts to over expand in its denial letter. No reasonable layman would understand the FLSA, or expect that the FLSA would be a preclusion to the grant of coverage. Ms. D'Anneo never even referenced the Federal FLSA statute in her complaint.

**C. Bonus Claims Were Not Necessarily "Earned Wages."**

_____PIIC's denial of benefits asserts that bonus money alleged to be owed to Ms. D'Anneo is included in the definition of "Earned Wages" in Exclusion B. The definition of "Earned Wages" includes only "wages or overtime pay for services rendered." By its own terms it would not cover wages that were for services not rendered. For instance, if Ms. D'Anneo claimed contract damages for future earnings that were not yet due then her claim would not be for services rendered.

Ms. D'Anneo's suit indicated in paragraph 9 lines 14 - 16 that she was precluded from earning a $50,000 bonus because LSSI allegedly unfairly reassigned her job duties:

> Plaintiff further explained her belief that it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised. (Emphasis added.)

Instead of accepting the allegation of a "potential covered claim damage" and providing defense benefits, PIIC's denial letter proceeded to take up Ms. D'Anneo's position that moneys were owed even though PIIC knew that LSSI was disputing the allegations:

> With respect to the sales bonus, LSSI argues that because plaintiff does not contend she "earned" the projected $50,000 sales bonus, at least that portion of the bonus does not qualify as Earned Wages as defined by the Policy. LSSI points to plaintiff's allegation that "it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised." (Complaint, ¶9, lines 14 - 16.)
>
> However, while the complaint contends that D'Anneo "was promised the opportunity to earn bonus money projected to be at least $100,000 annually for satisfactory performance" it also alleges that during her employment, she "performed all work requested of her in a satisfactory manner." (Complaint ¶18, lines 26 - 17; ¶19, lines 1 - 2.) Plaintiff further alleges "she felt it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (Complaint ¶10, lines 19 - 20.) Finally, other than the single reference to the deprivation of an opportunity to earn the sales bonus, plaintiff makes no distinction in the complaint between wages owed to her under the performance bonus as opposed to the sales bonus. (Emphasis added.)
>
> PIIC Denial Letter, Exh. 3.

PIIC's denial letter violates a basic tenant of claim adjusting; it is not up to the insurer to forecast who is right or wrong in the lawsuit. Its obligation is to provide defense benefits if any "potentially" covered claim exists. Montrose v. Superior Court, 6 Cal.4th 297, 300 (1993). The claim for bonus money that Ms. D'Anneo may or may not have earned, or for which she may not have rendered services takes the claim out of Exclusion B. As long as a "potential" for coverage existed, PIIC was required to provide legal defense benefits. See, CNA Casualty v. Seaboard Surety Co., 176 Cal.App.3d 598 at 606 (1986). The mere existence of a potentially covered claim makes PIIC's denial/exclusion erroneous.

**D. FLSA Exclusion Is Not Plain, Clear Or Conspicuous.**

______Defendant's (FLSA) Exclusion B replaced an existing Exclusion B in the body of the policy. Neither exclusion defines what the Fair Labor Standards Act (FLSA) is or isn't. FLSA is by definition a federal statute. Ms. D'Anneo's complaint did not claim any federal statute as a

basis for her action. See Exhibit 2. FLSA, by definition, establishes "minimum wage, overtime pay and record keeping standards."

References to the U.S. Department of Labor website and the FLSA topic would quickly tell any insured that a FLSA claim would involve only the following matters: FLSA minimum wage, FLSA overtime, hours worked disputes, record keeping claims and youth employment. See, Department of Labor website printout, Exhibit 4. None of these types of claims were made by Ms. D'Anneo in her lawsuit. The complaint did not raise or discuss minimum wage, overtime or hours at all. It was a dispute about an alleged misrepresentation/breach of agreement of employment. FLSA didn't apply.

Similarly, the reference in Exclusion B to "any similar federal, state, local or foreign statutory law" is of no consequence to this claim. The only similar state labor provision dealing with minimum wage claims, hours, etc., are found at California Labor Code §1178, et. seq. Ms. D'Anneo's complaint did not assert claims under California Labor Code §1178 or any similar "minimum wage" argument or "overtime" argument. PIIC's attempt to rely upon a FLSA exclusion is simply misplaced. More importantly, a reasonable insured would not, upon referencing FLSA (minimum wage/overtime issues) standards, understand that the D'Anneo dispute came within these limitations. The policy certainly didn't define it at all. PIIC cannot expect an exclusion to cover matters an insured would not expect or comprehend as included.

California law on the issue of enforceability of exclusions holds that unless the exclusion is plain, clear and conspicuous it is not enforceable.

> An exclusion in an adhesion contract of insurance must be expressed in words which are "plain and clear." This means more than the traditional requirement that contract terms be "unambiguous." Precision is not enough. Understandability is also required. To be effective in this context, the exclusion must be couched in words which are part of the working vocabulary of average lay persons.
>
> "The policy should be read as a layman would read it . . ." (*Crane v. State Farm Fire & Cas. Co., supra*, 5 Cal.3d 112, 115, 95 Cal.Rptr. 513, 485 P.2d 1129.) "The insurer bears a heavy burden to draft exclusionary clauses in clear language comprehensible to lay persons." (*Stewart v. Estate of Bohnert*, *supra*, 101 Cal.App.3d 978, 988, 162 Cal.Rptr. 126.) The words must be such that "an ordinary layman can understand." (*Thompson v. Occidental Life Insurance Co.* (1973) 9 Cal.3d 904, 912, 109 Cal.Rptr. 473, 513, P.2d 353.) And "insurer . . . is bound to

> use language clear to the ordinary mind." (*Migliore v. Sheet Metal Workers Welfare Plan* (1971) 18 Cal.App.3d 201, 204, 95 Cal.Rptr. 669.) (Emphasis added.)
>
> Ponder v. Blue Cross
> 145 Cal.App.3d 709 -723 (1983)

The Exclusion B and its undefined reference to FLSA is buried "inside" in an exclusion that refers to ERISA, NLRA, Worker's Adjustment, COBRA, OSHA and other laws that most lawyers don't deal with or understand. A quick reference to FLSA regulations would lead an insured to believe that it only covers minimum wage and overtime disputes, neither of which are relevant to the D'Anneo claim (see Exhibit 4). The intent and scope of Exclusion B simply would not impart to a layman the understanding "PIIC's coverage counsel" tried to expand upon in the denial letter. LSSI did not and does not read Exclusion B to apply. (See attached Declaration of Greg Martin.) The parties did not intend to have Exclusion B apply to every conceivable labor code matter. Accordingly, LSSI asks that the court find Exclusion B is both inapplicable and it is not plain, clear or conspicuous.

## V.

## DEFENSE COST REIMBURSEMENT WAS EXPRESSLY PROMISED FOR BREACH OF CONTRACT CLAIMS.

PIIC's denial of coverage did not mention or rely upon Exclusion D of the policy. Exclusion D is interesting because it purports to eliminate indemnification for losses owed under an express contract of employment. However, Exclusion D in very explicit terms limits the scope of this exclusion to payment of the "contract benefits." It does not preclude PIIC from having to reimburse LSSI its defense expenses in resisting an **EPL** claim arising out of a breach of contract or misrepresentation claim:

> D. arising out of, based upon or attributable to obligations or payments owed under (I) an express (written or verbal) contract of employment, or (ii) an agreement to assume another's liability; however, this exclusion does not apply to any of the following:
>
> 1. liability of the **Private Company** which would have attached even in the absence of such contract or agreement; or
>
> 2. **Defense Costs**; (Emphasis added.)
>
> PIIC Policy, Exh. 1, pp. 4 and 5 of 19.

The policy clearly agrees that it will pay for **DEFENSE COSTS**, even though it will not pay for the breach of contract loss. Reading this provision of the policy along with the insuring language, one must come to the conclusion that the **EPL** coverage agrees and intends, at a minimum, to reimburse the insured **DEFENSE COSTS** incurred in defending an actual or alleged breach of contract and misrepresentation claims. Nothing in the policy, nor in the denial letter, nor in Exclusion B or D purports to withdraw **defense cost** reimbursement for breach of contract claims. This benefit unambiguously remains when all of PIIC's Exclusion B arguments are stripped away. Reading the policy as a whole it also demonstrates that the "intent" of the policy was to provide "defense cost" reimbursement on breach of employment contracts.

## VI.

## CONCLUSION.

The Employment Practices Liability (**EPL**) coverage agreed to insure LSSI against explicit **EPL** losses, including breach of contract, misrepresentation and negligent reassignment. LSSI had **EPL** claims made against it that were "covered" claims. PIIC's denial acknowledges "coverage." Exclusion B relied upon by PIIC only excludes FLSA claims of "overtime and minimum wage loss" claims, neither of which were made by Ms. D'Anneo. Exclusion D makes it all the more clear that regardless of anything else, **Defense Costs** were to be reimbursed on breach of contract claims. The policy and the intent of the policy was to cover **Defense Costs** incurred on breach of contract claims. Plaintiff respectfully submits that there is no material issue of fact as to the inapplicability of defendant's Exclusion B as to the subject claim and, accordingly, LSSI asks that this court rule as a matter of law that Exclusion B is not applicable to this action or claim.

Respectfully submitted,

DATED: July 17, 2008

LEVINE, STEINBERG, MILLER & HUVER

By: /s/ Harris I. Steinberg
HARRIS I. STEINBERG
Attorneys for Plaintiff, Lender Support Systems, Inc.