SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRIAN D. HARRISON Bar No. 157123
ANDREW J. KING Bar No. 253962
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDER SUPPORT SYSTEMS, INC.<br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE CO., and DOES I through 20, inclusive,<br><br>Defendants. | CASE NO. 08-CV-0848 WQH (BLM)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PHILADELPHIA INDEMNITY INSURANCE COMPANY FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>**[FRCP 56]**<br><br>DATE: October 6, 2008<br>TIME: 11:00 a.m. (Oral Argument)<br>DEPT.: 4<br>JUDGE: Hon. William Q. Hayes |

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 1

A. LSSI's Complaint Against Philadelphia ........ 1

B. The EPL Policy Issued by Philadelphia to LSSI ........ 2

C. The D'Anneo Action ........ 5

D. LSSI's Tender of the D'Anneo Action and Philadelphia's Denial of Coverage ........ 6

III. ARGUMENT ........ 6

A. Summary Judgment Standard ........ 6

B. California Law Regarding Contract Interpretation ........ 7

C. LSSI's Bad Faith and Declaratory Relief Causes of Action Fail as a Matter of Law Because the FLSA Exclusion Applies to Preclude Coverage for the D'Anneo Action ........ 8

1. Coverage for the D'Anneo Action Is Excluded by the FLSA Exclusion Because Bonus Money Qualifies as Earned Wages ........ 9

2. There Is No Coverage for the Labor Code Causes of Action Because the FLSA Exclusion Applies ........ 10

3. There Is No Coverage for the Conversion Cause of Action ........ 13

4. There Is No Coverage For Business and Professions Code Section 17200 Claims ........ 14

D. LSSI's Cause of Action for Bad Faith Must Be Dismissed Because There Is a Genuine Dispute As To Coverage ........ 14

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Beck Park Apts. v. United States Dept. of Housing*, 695 F.2d 366 (9th Cir. 1982) ....7

*Farmers Automobile Insurance Association v. St. Paul Mercury Ins. Co.*, 482 F.3d 976 (7th Cir. 2007) ....13, 14

*Homestead Insurance Co. v. The Ryness Co.*, 851 F. Supp. 1441 (N.D. Cal. 1992) ....8

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (S.C. 1960) ....11

*Payless Shoesource, Inc. v. Travelers Companies, Inc.*, __ F. Supp. 2d __, 2008 WL 2995553 (D. Kan.) ....12, 13, 14

*United States v. King Features Entertainment, Inc.*, 843 F.2d 394 (9th Cir. 1988) ....7, 8

## STATE CASES

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ....9, 14, 15

*Big 5 Corp v. Gulf Underwriters Ins. Co.*, 2003 WL 22127029 ....12

*Chateau Chamberay*, 90 Cal. App. 4th at 346 (citation omitted) ....15, 16

*Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal. App. 4th 1372, 14 Cal. Rptr. 2d 673 ....8

*County of San Diego v. Ace Prop. & Cas. Ins. Co.* (2005) 37 Cal. 4th 406, 33 Cal. Rptr. 3d 583 (citation omitted) ....8

*Foster Gardner Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 77 Cal. Rptr. 2d 107 (1998) ....9

*Montrose Chem. Co. of Calif. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal. Rptr. 2d 324 (1995) ....9

*Opsal v. United Services. Auto Ass'n* (1991) 2 Cal. App. 4th 1197, 10 Cal. Rptr. 352 ....15

*Palmer v. Truck Ins. Exchange, Inc.*, 21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647, 988 P.2d 568 (1999) ....8

## TABLE OF AUTHORITIES
**(Continued)**

**PAGE**

*EOTT Energy Corp. v. Storebrand Int'l Ins. Co.* (1996) 45 Cal. App. 4th 565, 52 Cal. Rptr. 2d 894 ........ 8

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995) ........ 8, 9

*Ward Gen. Ins. Serv. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 7 Cal.Rptr.3d 844 (2004) ........ 8, 9

**FEDERAL STATUTES**

28 U.S.C. § 1441 ........ 2

Federal Rule of Civil Procedure 56, subdivision (b) ........ 7

FRCP 56 ........ 1

Title 29 U.S.C.A. Chapter 8 ........ 11

**STATE STATUTES**

California Business & Professions Code § 17200 ........ 6

Civ. Code § 1636 ........ 8, 9

Civ. Code § 1638 ........ 8

Labor Code § 200(a) ........ 10

Labor Code § 201 ........ 5, 10, 14

Labor Code § 202 ........ 5, 10

Labor Code § 203 ........ 5, 11

Business & Professions Code § 17200 ........ 10, 14

SEDGWICK
DETERT, MORAN & ARNOLD LLP

## I. INTRODUCTION

This action involves a dispute between the insured, Lender Support Systems, Inc. ("LSSI") and its insurer, Philadelphia Indemnity Insurance Company ("Philadelphia"), arising from Philadelphia's proper denial of coverage for an underlying employment claim. In the underlying action, entitled Sonja D'Anneo v. Lender Support Systems, Inc., et al. (Case No. 37-3007-00064417-CU-OE-CTL) ("D'Anneo Action"), former LSSI employee Sonja D'Anneo ("D'Anneo") filed suit in San Diego County Superior Court against LSSI for unpaid bonuses. Philadelphia issued an employment practices liability policy to LSSI for the policy period January 6, 2007 to January 6, 2008 (the "Policy"). Under California law, bonuses constitute "wages," which are not covered under the Policy because of the Fair Labor Standards Act ("FLSA") Exclusion. Accordingly, Philadelphia declined coverage for defense and indemnity.

LSSI settled the D'Anneo Action settled for $35,000. After the D'Anneo Action settled, LSSI filed a complaint in San Diego County Superior Court alleging that Philadelphia breached the terms of the insurance policy and violated the covenant of good faith and fair dealing. Philadelphia removed the action to this Court, pursuant to the provisions of 28 U.S.C. § 1441. LSSI incorrectly contends that the D'Anneo Action was a covered loss, and that Philadelphia must reimburse defense costs to LSSI and indemnify LSSI for the amount paid to settle the D'Anneo Action. LSSI's claims are without merit and contrary to the terms and conditions of the Policy. Therefore, Philadelphia moves for summary judgment on the causes of action for bad faith and declaratory relief. In the alternative, Philadelphia seeks partial summary judgment on the cause of action for bad faith because there is a genuine dispute in the application of the FLSA Exclusion with regard to Philadelphia's obligation to indemnify LSSI for loss relating to the D'Anneo Action.

## II. STATEMENT OF FACTS

### A. LSSI's Complaint Against Philadelphia

On April 8, 2008, LSSI filed a complaint against Philadelphia for bad faith and declaratory relief. (Complaint, Request for Judicial Notice ("RJN"), Ex. A). The complaint

alleges that on or about April 2, 2007, LSSI suffered a compensable loss under the Employment Practices Coverage provided by Philadelphia when it was served with a complaint filed by former LSSI employee Sonja D'Anneo ("D'Anneo Complaint") in San Diego County Superior Court entitled Sonja D'Anneo v. Lender Support Systems, Inc., et al. (Case No. 37-3007-00064417-CU-OE-CTL) ("D'Anneo Action") (Complaint, RJN, Ex. A at ¶ 5). In the complaint, LSSI avers that Philadelphia breached its duty of good faith and fair dealing when it allegedly: (a) "failed to make legal defense cost payments to [LSSI] at a time when defendant knew that [LSSI] was entitled to said payments" because the claims in the D'Anneo Action were "expressly covered events"; (b) misrepresented facts and policy provisions when Philadelphia "refused to defend or assist LSSI based on an exclusion that was inapplicable and that was not plain, conspicuous, clear, and unambiguous"; (c) did not make a good faith attempt to effect a settlement of a claim for defense benefits; and (d) made "other acts or omissions of which [LSSI] is presently unaware." (Complaint, RJN, Ex. A at ¶ 7.) LSSI further contends that an actual controversy exists between LSSI, on the one hand, and Philadelphia, on the other hand, whether there was an obligation for Philadelphia to defend or to indemnify LSSI against the allegations in the D'Anneo Action, and seeks a declaration of the rights of the parties pursuant to the terms and conditions of the Policy. (Complaint, RJN, Ex. A at ¶¶ 12-14.) LSSI seeks a declaration of the rights of the parties under the Policy, and to recover all damages for Philadelphia's alleged failure to provide insurance benefits, general damages, punitive damages, costs of suit and attorneys' fees. (Complaint, RJN, Ex. A at Prayer for Relief, ¶¶ 1-6.)

**B. The EPL Policy Issued by Philadelphia to LSSI**

Philadelphia provided employment practices liability insurance to LSSI under Private Company Protection Plus Policy No. PHSD222905, effective January 6, 2007 to January 6, 2008 (the "Policy"). The Policy provided limits of $1,000,000, subject to a $25,000 retention per claim. (See Policy, attached as Exhibit 1 to the Declaration of Susan Shue in Support of Philadelphia's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment (hereinafter "Shue Dec."). The applicable policy provisions provide in pertinent part:

PART 2. EMPLOYMENT PRACTICES LIABILITY INSURANCE.

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I. INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured, Loss** from **Claims** made against the **Insured** during the **Policy Period** . . . and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

The Third Party EPLI Exclusion Endorsement, form PI-PRD-43 (09/02), replaces Part 2, Section II. DEFINITIONS, A. **Employment Practice Act** with the following, in pertinent part:

II. DEFINITIONS

A. **Employment Practice Act** means any actual or alleged:

* * *

2. breach of a written or oral employment contract or implied employment contract;

3. employment related misrepresentation;

* * *

6. wrongful deprivation of a career opportunity;

* * *

17. violation of any federal, state or local civil rights laws;

and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Organization**.

The Amendment of Exclusions Endorsement, form PI-PRD-75 (12/03), replaces Part 2, (**Employment Practices Liability Insurance**), Section III (EXCLUSIONS), item B. with the following:

III. EXCLUSIONS

The **Underwriter** shall not be liable under this Part 2 to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

* * *

for any actual or alleged violation(s) of any of the responsibilities, obligations

or duties imposed by … the Fair Labor Standards Act … any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory or common law … provided further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** … including, but not limited to … any unfair business practice claim alleged because of failure to pay **Earned Wages** …. [1]

PART 4. COMMON POLICY DEFINITIONS

* * *

B **Claim** means:

* * *

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

* * *

D. **Defense Costs** means:

1. any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim**, whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter**, in the investigation, adjustment, defense and appeal of a **Claim**, . . . .

* * *

J. **Loss** means:

1. **Damages**;

2. **Defense Costs;**

but **Loss** does not include:

* * *

3. matters deemed uninsurable under the law to which this Policy shall be construed; or

4. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages;

The Amendment of Exclusions Endorsement, form PI-PRO-75 (12/03), supplements Part 4

[1] This exclusion is hereinafter referred to as the "FLSA Exclusion".

(**COMMON POLICY DEFINITIONS**) with the following:

**Earned Wages** means wages or overtime pay for services rendered.

(Shue Decl., ¶ 3, Ex.1.)

**C. The D'Anneo Action**

On April 2, 2007, Sonja D'Anneo, a former LSSI employee, filed a complaint against LSSI ("D'Anneo Complaint") in San Diego County Superior Court entitled Sonja D'Anneo v. Lender Support Systems, Inc., et al. (Case No. 37-3007-00064417-CU-OE-CTL) ("D'Anneo Action"), setting forth causes of action for (1) failure to pay earned wages in violation of Labor Code §§ 201[2] and 202[3]; (2) claim of waiting time penalties for not paying wages in violation of Labor Code § 203[4]; (3) conversion; and (4) unfair business practices in violation of California Business & Professions Code § 17200. (D'Anneo Complaint, RJN, Ex. B).

The D'Anneo Complaint alleged that LSSI failed or refused to pay her "wages," including bonus money "earned." Specifically, the D'Anneo Complaint contended that she agreed to join LSSI expecting and relying on LSSI's promise to pay her an achievable bonus totaling at least $100,000. (D'Anneo Complaint, RJN, Ex. B at ¶ 5, lines 11-14; ¶ 18, lines 26-27.) "LSSI promised to pay Plaintiff $50,000 so long as she performed in a satisfactory manner, and met readily achievable goals that LSSI promised to define at the beginning of her employment" and "promised to pay Plaintiff an additional bonus equal to 10% of any sales generated by Plaintiff, projected to be at least $50,000 of additional bonus money. (D'Anneo Complaint, RJN, Ex. B at ¶ 5, lines 14 – 17; ¶ 18, lines 26-27.) The D'Anneo Complaint further alleged that "LSSI had only paid Plaintiff approximately $30,000 of her projected $100,000 bonus money", "that at

---

[2] Labor Code § 201 provides, in pertinent part, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

[3] Labor Code § 202 provides, in pertinent part, that "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter[.]"

[4] Labor Code § 203 provides, in pertinent part, that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

absolute minimum she should receive the additional $20,000 performance bonus", and that "it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (D'Anneo Complaint, RJN, Ex. B at ¶ 9, lines 10-11 and 13-14; and ¶10, lines 19-20, respectively.)

On May 21, 2007, the law firm of Bryan, Cave LLP filed an answer on behalf of LSSI in the D'Anneo Action. (D'Anneo Answer, RJN, Ex. C.)

### D. LSSI's Tender of the D'Anneo Action and Philadelphia's Denial of Coverage

On October 9, 2007, Philadelphia received first notice of the D'Anneo Action from LSSI when it received a two-page report from GAB Robins. (Shue Decl., ¶ 4). According to the GAB Robins report, on October 8, 2007 at 7:13 p.m., Jim Carr of LSSI called and reported the claim of Sonja D'Anneo against LSSI. Under the "Injury Description" section of the GAB Robins report, it states: "[a]bove individual is suing Lender Support Systems for bonuses she feels are owed to her." (Shue Decl., ¶ 4, Ex. 2). On October 9, 2007, claims examiner Susan Shue spoke with Mr. Carr at LSSI and requested a copy of the D'Anneo Complaint. On or around October 12, 2007, LSSI provided a copy of the D'Anneo Complaint to Philadelphia. (Shue Decl., ¶ 5). On December 13, 2007, Philadelphia, after a careful view review of the claim, issued a letter to LSSI stating that it had determined that because of the Federal Labor Standards Act ("FLSA") Exclusion, as well as other policy provisions, coverage for the D'Anneo Complaint was precluded. (Shue Decl., ¶ 5, Ex. 3.) The D'Anneo Action settled for $35,000. In February 2008, the D'Anneo Complaint was dismissed with prejudice. (D'Anneo Dismissal and Notice of Entry, RJN, Ex. D.)

## III. ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56, subdivision (b) provides that a party against whom a claim is asserted may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

SEDGWICK
DETERT, MORAN & ARNOLD LLP

party is entitled a judgment as a matter of law. Fed.R.Civ.P. 56(c); California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). If the moving party satisfies its burden of establishing that there is no genuine issue as to any material fact, the District Court shall grant summary judgment in favor of movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Contract actions are particularly appropriate for summary judgment determinations, since interpretation of a contract is a matter of law. Beck Park Apts. v. United States Dept. of Housing, 695 F.2d 366, 369 (9th Cir. 1982). Thus, in United States v. King Features Entertainment, Inc., 843 F.2d 394, 398 (9th Cir. 1988), the court affirmed a grant of summary judgment on a contract because a party failed to show the existence of a genuine issue of fact. Id. at 400. The meaning of an insurance policy is also a question of law for the court. Palmer v. Truck Ins. Exchange, Inc., 21 Cal.4th 1109, 1115, 90 Cal.Rptr.2d 647, 988 P.2d 568 (1999). As stated in Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995), interpretation of an insurance policy is a question of law since insurance policies are contracts and, as such, are subject to the statutory rules of contract interpretation. Id. at 18. Therefore, summary judgment is the appropriate remedy to make the legal determination of the meaning of an insurance policy. Homestead Insurance Co. v. The Ryness Co., 851 F.Supp. 1441, 1443 (N.D.Cal. 1992), aff'd, 15 F.3d 1085 (9th Cir. 1994).

Here, the issues before the court are pure issues of law as they concerns the meaning, construction, and application of the terms and conditions of the Policy. *See* EOTT Energy Corp. v. Storebrand Int'l Ins. Co. (1996) 45 Cal.App.4th 565, 572, 52 Cal.Rptr.2d 894 ("The sole issue with which we are concerned involves the meaning, construction, and application of the language of the policy. That is a pure issue of law."). Thus, "it is the duty of the trial court to determine the issue of law" on this motion for summary adjudication. Coca-Cola Bottling Co. v. Lucky Stores, Inc. (1992) 11 Cal.App.4th 1372, 1377, 14 Cal.Rptr.2d 673.

**B. California Law Regarding Contract Interpretation**

Although insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. Ward Gen. Ins. Serv. v. Employers Fire Ins.

Co., 114 Cal.App.4th 548, 552, 7 Cal.Rptr.3d 844 (2004). The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties as expressed by the terms and conditions of the policy. Id. Such intent is to be inferred, if possible, solely from the written provisions of the contract. County of San Diego v. Ace Prop. & Cas. Ins. Co. (2005) 37 Cal. 4th 406, 415, 33 Cal.Rptr.3d 583 (citation omitted); *see also* Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties..."); *see also* Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible..."). If the language is clear and explicit, it governs. Id. (citing Bank of the West v. Superior Court, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538 (1992). *See also* Civ. Code § 1638.

The rules governing interpretation of an insurance policy require courts to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370 (1995). If the meaning a layperson would ascribe to a contract of insurance language is clear and unambiguous, courts will apply that meaning. Montrose Chem. Co. of Calif. v. Admiral Ins. Co., 10 Cal.4th 645, 666-67, 42 Cal.Rptr.2d 324 (1995). A policy provision will only be considered ambiguous when it is capable of two of more constructions, both of which are reasonable. Ward, supra, 114 Cal.App.4th at 552. However, courts will not strain to create an ambiguity where none exists. Waller, supra, 114 Cal.App.4th at 18-19. The fact that a term is not defined in an insurance policy does not make it ambiguous. Foster Gardner Inc. v. National Union Fire Ins. Co., 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107 (1998).

**C. LSSI's Bad Faith and Declaratory Relief Causes of Action Fail as a Matter of Law Because the FLSA Exclusion Applies to Preclude Coverage for the D'Anneo Action**

The D'Anneo Action constitutes a Claim (a civil proceeding commenced by the filing of a complaint). "Employment Practice Act" is defined under the Policy to include "breach of a written or oral employment contract or implied employment contract," "employment related misrepresentation," "wrongful deprivation of a career opportunity," and "violation of any federal, state or local civil rights laws." The allegations in the D'Anneo Complaint arise from

Employment Practice Acts. Thus, the Claim falls to Part 2 of the policy.

Exclusion B. to Part 2 of the Policy (the FLSA Exclusion) states that Philadelphia shall not be liable to make any payment for Loss in connection with any Claim made against LSSI:

> for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by … the Fair Labor Standards Act … any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory or common law … provided further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** … including, but not limited to … any unfair business practice claim alleged because of failure to pay **Earned Wages** ….

(Emphasis added.) Here, the FLSA Exclusion applies because the D'Anneo Complaint seeks to recover earned wages and/or sets forth claims that are based upon actual or alleged violations of sections of the Labor Code, Business & Professions Code § 17200 and common law (conversion) which impose responsibilities, obligations or duties similar to those imposed by the Fair Labor Standards Act ("FLSA").

### 1. Coverage for the D'Anneo Action Is Excluded by the FLSA Exclusion Because Bonus Money Qualifies as Earned Wages

Section 200 of the California Labor Code provides that "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). Likewise, the California Division of Labor Standards Enforcement offers the following definition of "bonus" in its "Glossary"[5]:

> Money promised to an employee in addition to the monthly salary, hourly wage, commission or piece rate usually due as compensation. Bonuses are in addition to any other remuneration rate and may be predicated on performance over and above that which is paid for hours worked, pieces made, or sales completed. . . . Sums earned as bonuses are wages under the definition found in Labor Code Section 200.

To the extent the D'Anneo Action alleges that LSSI failed or refused to pay "wages" owed to D'Anneo, including bonus money earned by performing satisfactorily and/or meeting all agreed-to conditions, the bonus money qualifies as "Earned Wages" as defined by the Policy and

[5] The glossary is available at http://www.dir.ca.gov/dlse/Glossary.asp.

SEDGWICK DETERT, MORAN & ARNOLD LLP

is precluded from coverage under the FLSA Exclusion.

With respect to the sales bonus, LSSI argues that because D'Anneo does not contend she "earned" the projected $50,000 sales bonus, at least that portion of the bonus does not qualify as Earned Wages as defined by the Policy. LSSI points to the allegation that "it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised." (D'Anneo Complaint, RJN, Ex. B at ¶9, lines 14-16.)

However, while the complaint contends that D'Anneo "was promised the opportunity to earn bonus money projected to be at least $100,000 annually for satisfactory performance" it also alleges that during her employment, she "performed all work requested of her in a satisfactory manner." (D'Anneo Complaint, RJN, Ex. B at ¶18, lines 26-27; ¶19, lines 1-2.) The D'Anneo Complaint further alleges "she felt it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (D'Anneo Complaint, RJN, Ex. B at ¶10, lines 19-20). Finally, other than the single reference to the deprivation of an opportunity to earn the sales bonus, the D'Anneo Complaint makes no distinction in the complaint between wages owed under the performance bonus as opposed to the sales bonus.

In sum, D'Anneo alleges that she performed *all work* requested in a satisfactory manner, including generating a substantial amount of sales, and does, in fact, contend that she "earned" both the performance and sales bonuses. (D'Anneo Complaint, RJN, Ex. B at ¶10, lines 19-20; ¶ 18, lines 26-27; ¶ 19, lines 1-2). Further, D'Anneo alleges that she could not reach the $100,000 amount alleged in paragraph 18 of the complaint without including both the projected $50,000 performance bonus and the projected $50,000 sales bonus. Therefore, the allegations in the D'Anneo Complaint that LSSI failed and refused to pay her wages, including performance and sales bonus money earned, constitute Earned Wages as defined by the Policy and are precluded from coverage under the FLSA Exclusion.

**2. There Is No Coverage for the Labor Code Causes of Action Because the FLSA Exclusion Applies**

There is no coverage for the first cause of action for failure to pay earned wages in violation of Labor Code §§ 201 and 202 or the second cause of action for waiting time penalties

SEDGWICK
DETERT, MORAN & ARNOLD LLP

for not paying wages in violation of Labor Code § 203 because the FLSA Exclusion applies. Title 29 U.S.C.A. Chapter 8, sections 201-219, comprise a federal statute known as the Fair Labor Standards Act of 1938 ("FLSA"). The central purpose of the FLSA is to achieve certain minimum labor standards. Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288 (S.C. 1960).

The California Labor Code regulates labor on the state level, including regulation of wages and hours, and is thus similar to the FLSA. However, the Labor Code may at times contain more specific rules and regulations than the FLSA. In practice, the FLSA is a broad statute, and the Labor Code incorporates many of the same regulations as the FLSA, but may offer more protection with respect to minimum wages, overtime wages, and payment of wages. Based on review of the Labor Code as a whole, its general purpose is the same as that of the FLSA - - to achieve minimum labor standards, including regulation of working hours and payment of wages. Although some of the Labor Code sections may provide more specific protection than their FLSA counterparts, or these statutes may at times come to different conclusions regarding an issue, these two statutes regulate the same subject matter and their goal is the same – regulation of wage and hours. As such, the Labor Code and the FLSA contain "similar" provisions.

The FLSA Exclusion does not state that, to be applicable, state or local statutory provisions at issue must be "the same as" or "identical to" those contained in the FLSA. On the contrary, the language of the FLSA Exclusion states that, to be applicable, state or local statutory provisions need only be "similar" to the FLSA. Because things are similar, and not identical, there will necessarily be some differences when things are similar. Since the Labor Code and the FLSA regulate the same subject matter, they are all "similar" and, therefore, the FLSA Exclusion applies to the first and second causes of action in the D'Anneo Complaint.

Research of California law does not reveal any published cases that interpret the FLSA Exclusion or similar "FLSA" exclusions.[6] However, in other federal jurisdictions both the

---

[6] However, the United States District Court , Central District of California did address a similar issue in the unpublished decision Big 5 Corp v. Gulf Underwriters Ins. Co., 2003 WL 22127029.

SEDGWICK
DETERT, MORAN & ARNOLD LLP

United States District Court, District of Kansas, and the United States Court of Appeals, Seventh Circuit, separately held that an FLSA Exclusion with language similar to the FLSA exclusion in the Policy issued to LSSI was invoked in actions alleging state labor law violations.

In Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 (D. Kan.), a decision issued August 4, 2008, the court granted Travelers' motion for summary judgment on the insured's first cause of action for recovery of unpaid wages and penalties based on a violation of the California Labor Code, the second cause of action for unfair business practices, and the third cause of action for violation of a provision of the California Labor Code governing when an employer is required to pay an employee after the employee's separation from employment. The exclusion at issue in Payless stated:

> A. The Insurer shall not be liable for Loss on account of any Claim made against any Insured:
>
> ....
>
> 3. for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, the Employee Retirement Income Security Act of 1974, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state, or local statutory or common law or any amendments, rules or regulations promulgated under any of the foregoing; provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment on account of the exercise of rights pursuant to any such law, rule or regulation;

*Id.* at *3. The District Court found that this exclusion was not ambiguous, and that "the California wage and hour provisions are "similar" to the FLSA and that they need not be identical to the FLSA in order to be covered by the exclusions." *Id.* at *7.

Further, the District Court found the Seventh Circuit's decision in Farmers Automobile Insurance Association v. St. Paul Mercury Ins. Co., 482 F. 3d 976 (7th Cir. 2007), a case that involved a policy exclusion with identical language to the exclusion in Payless, to be instructive. In the Farmers decision, the only question before the court was whether Illinois' statutory overtime pay provision is "similar" to the FLSA. The Seventh Circuit, in rejecting the argument

that the exclusion was vague and could, therefore, not be given effect, explained that the scope of the two laws did not bear on the question of similarity; rather, the purpose of the exclusion was equally applicable to both statutes. *Id.* at 977 (quoting Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 at 8*). According to the Farmers court:

> the purpose of the exclusion is to avoid "moral hazard," which, in its most extreme form, is the temptation of an insured to precipitate the event insured against if the insurance goes beyond merely replacing a loss. "It's why an insurer will not insure your house against fire for more than it's worth," and why liability-insurance policies are presumed not to insure against breaches of contract. Insurance against a violation of an overtime law, whether federal or state, would enable the employer to refuse to pay overtime and then invoke coverage so that the cost of overtime would come to rest on to the insurance company. The employer would have violated the overtime law with impunity, unjustly enriching itself by the difference between the overtime wage for the hours in question and the straight wage. No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall.

*Id.* at 978-979 (quoting Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 at 8* (citations omitted).

Here, the FLSA Exclusion in the Policy issued to LSSI serves the same purpose as the exclusions at issue in the Payless and Farmers decisions – to preclude insuring beyond the replacement of a loss. Therefore, the FLSA Exclusion in the Policy applies because it precludes coverage for D'Anneo's claim for payment of earned wages and/or California Labor Code violations.

**3. There Is No Coverage for the Conversion Cause of Action**

The third cause of action in the D'Anneo Complaint for conversion connotes restitution of ill gotten gains. See D'Anneo Complaint, RJN, Ex. B at ¶¶30-31, lines 11-15. Restitution is not an insurable damage. Bank of the West v. Sup. Ct. of Contra Costa County, 2 Cal.4th 1254, 1260 (Cal. 1992) ("it is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.") Id. at 1266. Further, the definition of Loss also excludes injunctive relief. As such, there can be no coverage for D'Anneo's conversion cause of action.

4. **There Is No Coverage For Business and Professions Code Section 17200 Claims**

The fourth cause of action in the D'Anneo Complaint asserts that LSSI's violations of Labor Code §§ 201 and 202 constitute unfair and unlawful business practices in violation of California Business and Professions Code § 17200. The FLSA Exclusion expressly precludes coverage for unfair business practices involving Earned Wages and because this cause of action is wholly based upon LSSI's alleged violations of the Labor Code. See D'Anneo Complaint, RJN, Ex. B at ¶ 37, lines 9-11).

Here, D'Anneo's Section 17200 claim is totally dependant on her allegations against LSSI for its alleged violation of the Labor Code. D'Anneo's Section 17200 would not exist *but for* violations of those allegations. Since the Labor Code violations are precluded from coverage pursuant to the FLSA Exclusion, there can be no coverage for a cause of action directly arising from those excluded claims. Further, the Policy's definition of Loss excludes from coverage "matters deemed uninsurable under the law to which this Policy shall be construed." The only non-punitive monetary relief available under Section 17200 is restitution – which is uninsurable under California law. Bank of the West v. Sup. Ct. of Contra Costa County, 2 Cal.4th 1254, 1266. As such, there can be no coverage for any relief awarded under Section 17200.

In sum, since the FLSA Exclusion applies to preclude coverage for the D'Anneo Action in its entirety, Philadelphia did not breach the terms of the insurance contract by denying coverage for that action. Consequently, there is no merit to the causes of action for declaratory relief and bad faith in LSSI's complaint because those causes of action are dependent on Philadelphia's alleged breach, which did not occur. Given the clear, unambiguous language contained in the FLSA Exclusion, the court should apply the FLSA Exclusion on its face and hold that coverage is not available for the D'Anneo Action under the Policy because the FLSA Exclusion applies.

D. **LSSI's Cause of Action for Bad Faith Must Be Dismissed Because There Is a Genuine Dispute As To Coverage**

Even if the court concludes that the FLSA Exclusion does not apply, the genuine issue

doctrine supports Philadelphia's motion for partial summary judgment on the bad faith claim. A bad faith claim should be dismissed on summary adjudication if the insurer demonstrates that there was a genuine dispute as to coverage. Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co. (2001) 90 Cal.App.4th 335; 108 Cal.Rptr. 776 (holding that trial court did not err in granting insurer summary adjudication on insured's bad faith claim where there was a genuine coverage dispute); *see also* Opsal v. United Services. Auto Ass'n (1991) 2 Cal.App.4th 1197, 1205-1206, 10 Cal.Rptr. 352 ("bad faith liability cannot be imposed where there 'exist[s] a genuine issue as to [the insurer's] liability under California law.'") (citation omitted). Erroneous denial of a claim may breach the insured's contract, but does not by itself support tort liability: "'The mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insured's liability under California law, does not expose the insurer to bad faith liability.'" Chateau Chamberay, 90 Cal.App.4th at 346 (citation omitted). Here, Philadelphia has demonstrated that there is a genuine dispute in the application of the FLSA Exclusion with regard to Philadelphia's obligation to indemnify LSSI for Loss relating to the D'Anneo Action and, therefore, LSSI's claim for bad faith must be dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Philadelphia motion for summary judgment should be granted. In the alternative, Philadelphia motion for partial summary judgment on the cause of action for bad faith should be granted.

DATED: August 18, 2008

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: [signature]
BRIAN D. HARRISON
Attorneys for Defendant
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

SEDGWICK
DETERT, MORAN & ARNOLD LLP



SF/1522821v1

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On August 18, 2008, I served the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PHILADELPHIA INDEMNITY INSURANCE COMPANY FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☐ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

☒ E-MAIL OR ELECTRONIC TRANSMISSION – by transmitting via e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) set forth below. I did not receive,within a reasonable time after the tranmission, any electronic message or other indicating that the transmission was unsuccessful.

Harris I. Steinberg, Esq.
Levine, Steinberg, Miller & Huver
550 West C Street, Suite 1810
San Diego, CA 92101
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiff
*Lender Support Systems, Inc.*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on August 18, 2008, at San Francisco, California.

Penelope Prill

Penelope Prill

SEDGWICK
DETERT, MORAN & ARNOLD LLP