# Exhibit 3

SEDGWICK
DETERT, MORAN & ARNOLD LLP

One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Tel: 415.781.7900 Fax: 415.781.2635

www.sdma.com

December 13, 2007

VIA US MAIL AND FACSIMILE

M. Patricia Welling, Esq.
General Counsel
**LENDER SUPPORT SYSTEMS, INC.**
13475 Danielson Street, #220
Poway, California 92064

**Re:** ***Sonja D'Anneo v. Lender Support Systems, Inc., et al.***
**San Diego Superior Court Case No.: 37-2007-00064417-CU-OE-CTL**
**Insured:** **Lender Support Systems, Inc.**
**Claimant:** **Sonja D'Anneo**
**Policy No.:** **PHSD222905**
**Claim No.:** **289131**
**Our File No.:** **0875-010964**

Dear Ms. Welling:

Our firm has been retained by Philadelphia Indemnity Insurance Company ("Philadelphia") to assist in its investigation of the referenced matter. After careful consideration, for the reasons expressed herein, Philadelphia has determined that coverage is not available for the claims asserted in the *D'Anneo* action.

We understand that you are the person to whom Philadelphia should be communicating this information. If we are mistaken and we should be communicating this information to someone else, please advise us as soon as possible of that person's name and contact information.

Should you or any insured believe that Philadelphia's analysis is in error, Philadelphia will consider any additional documentation or information which might be provided. Any such additional information or documentation should be forwarded to our attention.

SF/1470827v1

CF 064

## POLICY INFORMATION

Philadelphia issued Private Company Protection Plus Policy No. PHSD222905 to Lender Support Systems, Inc. ("LSSI"), effective January 6, 2007 to January 6, 2008 (the "Policy"). The Policy provides Part 2 Employment Practices Liability with a limit of liability of $1,000,000 for each policy period, subject to a $25,000 retention per claim. The retention is waived upon a finding of no liability. Pursuant to the Entrepreneurs Pro-Pak Elite Coverage Endorsement, defense costs are in addition to, not part of, the limit of liability.

The Policy provides a duty to defend upon request of the insured. LSSI has chosen not to tender this matter to Philadelphia and instead is seeking reimbursement of defense costs, less retention, from the date of tender going forward.

## CLAIM SUMMARY

Philadelphia provides the following summary based on its understanding of the facts and circumstances at issue. If you believe Philadelphia is mistaken in its understanding, please let us know of any necessary corrections at your earliest convenience. By providing this summary, Philadelphia does not intend to suggest that any of the allegations identified below are true.

On April 2, 2007, Sonja D'Anneo ("D'Anneo" or "plaintiff") filed a complaint against LSSI in San Diego Superior Court entitled *Sonja D'Anneo v. Lender Support Systems, Inc., et al.* (Case No. 37-3007-00064417-CU-OE-CTL.) (the "*D'Anneo* action").

In her complaint, D'Anneo alleges LSSI failed or refused to pay her "wages," including bonus money "earned." Specifically, D'Anneo contends she agreed to join LSSI expecting and relying on LSSI's promise to pay her an achievable bonus totaling at least $100,000. D'Anneo alleges LSSI promised to pay her $50,000 so long as she performed in a satisfactory manner and met readily achievable goals. She further alleges LSSI promised to pay her an additional bonus equal to 10% of any sales she generated, projected to be at least $50,000 of additional bonus money.

Soon after her employment began, D'Anneo contends the scope of her employment was changed from a position with substantial opportunity to generate new client sales, to a position which focused on retaining and generating revenue from existing clients.

After D'Anneo's one year review, she alleges LSSI had paid only $30,000 of her $50,000 performance bonus. Plaintiff contends it wasn't fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised. She claims the Insured then offered to pay an additional $12,500 of the performance bonus but refused to pay any part of the $50,000 sales bonus.

The complaint contains causes of action for: (1) violation of California Labor Code ("Labor Code") §§ 201 and 202; (2) penalties under Labor Code § 203; (3) Conversion; and (4) violation of California Business & Professions Code § 17200 *et seq.* ("Section 17200").

Plaintiff alleges that LSSI violated Labor Code §§ 201 and 202 by failing or refusing to pay her wages due, including bonus money, at her time of departure as required by Labor Code § 204. She seeks civil penalties pursuant to Labor Code § 210, costs and attorneys fees pursuant to Labor Code §218.5 and interest due on all unpaid wages pursuant to Labor Code § 281.6. Plaintiff further seeks waiting time penalties under Labor Code § 203 for LSSI's failure to timely pay wages at the time of discharge of employment.

Plaintiff's Third Cause of Action contends that LSSI was aware and admitted that she was owned additional bonus money at the time of her departure and made a conscious decision to use the wages owed as leverage to induce plaintiff into entering into a Settlement Agreement entitling her to punitive damages.

Finally, plaintiff alleges that LSSI's conduct constitutes an unfair and unlawful business practice in violation of Section 17200 entitling her to equitable relief in the form of restitution.

By her complaint, plaintiff seeks to recover compensatory damages including, but not limited to, lost wages and employment benefits in an amount in excess of $100,000; reasonable attorneys' fees; waiting time penalties in the amount of $25,000; punitive damages; injunctive relief ordering LSSI to cease and desist all unfair and illegal business activities, restitution and disgorgement of wages earned and retained by LSSI during unlawful and illegal business activities; interest; costs of suit; and any other legal and/or equitable relief the court deems just and proper.

## COVERAGE ANALYSIS

### A. Policy Provisions

#### 1. Insuring Agreement

Part 2.1. of the Policy provides Employment Practices Liability coverage as follows:

> The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

CF 066

2. **Employment Practice Act**

Part 2.II.A. of the Policy, as amended by the Third Party EPLI Exclusion endorsement, defines "Employment Practice Act" to include, in pertinent part:

> breach of a written or oral employment contract or implied employment contract; employment related misrepresentation; ... wrongful deprivation of a career opportunity; ... [or] violation of any federal, state or local civil rights laws ... committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or **Organization**.

The *D'Anneo* alleges an Employment Practice Act which took place before or during the policy period.

3. **Claim and Notice**

Pursuant to Part 4.B.2. of the Policy, the *D'Anneo* action, a judicial or civil proceeding commenced by the filing of a complaint, qualifies as a Claim that was timely noticed to Philadelphia.

B. **Exclusion B - FLSA Exclusion**

Part 2.III.B. of the Policy, as amended by the Amendment of Exclusions endorsement, provides in pertinent part, that Philadelphia will not be liable to make any payment for Loss in connection with any Claim made against the Insured:

> for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by ... the Fair Labor Standards Act ... any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory or common law ... provided further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** ... including, but not limited to ... any unfair business practice claim alleged because of failure to pay **Earned Wages** ... .

"Earned Wages" is defined as "wages or overtime pay for services rendered."

**1. No Coverage Because Bonus Money Qualifies as "Wages"**

Section 200 of the California Labor Code provides that "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). Likewise, the California Division of Labor Standards Enforcement offers the following definition of "bonus" in its "Glossary"[1]:

> Money promised to an employee in addition to the monthly salary, hourly wage, commission or piece rate usually due as compensation. Bonuses are in addition to any other remuneration rate and may be predicated on performance over and above that which is paid for hours worked, pieces made, or sales completed. . . . Sums earned as bonuses are wages under the definition found in Labor Code Section 200.

Plaintiff alleges that LSSI failed or refused to pay "wages" owed in the form of bonus money earned by performing satisfactorily and/or meeting all agreed-to conditions. Bonus money constitutes "Earned Wages" as defined by the Policy and is precluded from coverage under the FLSA Exclusion.

With respect to the sales bonus, LSSI argues that because plaintiff does not contend she "earned" the projected $50,000 sales bonus, at least that portion of the bonus does not qualify as Earned Wages as defined by the Policy. LSSI points to plaintiff's allegation that "it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised." (Complaint, ¶9, lines 14-16.)

However, while the complaint contends that D'Anneo "was promised the opportunity to earn bonus money projected to be at least $100,000 annually for satisfactory performance" it also alleges that during her employment, she "performed all work requested of her in a satisfactory manner." (Complaint, ¶18, lines 26-27; ¶19, lines 1-2.) Plaintiff further alleges "she felt it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (Complaint, ¶10, lines 19-20). Finally, other than the single reference to the deprivation of an opportunity to earn the sales bonus, plaintiff makes no distinction in the complaint between wages owed to her under the performance bonus as opposed to the sales bonus.

---

[1] The glossary is available at http://www.dir.ca.gov/dlse/Glossary.asp.

CF 068

Plaintiff alleges she performed *all work* requested in a satisfactory manner, including generating a substantial amount of sales. It appears plaintiff does, in fact, contend she "earned" both the performance and sales bonuses. Plaintiff could not reach the $100,000 amount alleged in paragraph 18 of the complaint without including both the $50,000 performance bonus and the $50,000 sales bonus. But regardless of whether plaintiff alleges or differentiates between performance and sales bonuses, they nevertheless remain bonuses which are "wages" under state law, and are excluded from coverage.

**2. <u>No Coverage for Labor Code Causes of Action</u>**

Title 29 U.S.C.A. Chapter 8, sections 201-216, comprise a federal statute known as the Fair Labor Standards Act of 1938 ("FLSA"). The central purpose of the FLSA is to achieve certain minimum labor standards. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (S.C. 1960). The Labor Code regulates labor (wages, hours and working conditions) on a state level.

The Labor Code regulates the same general subject matter as the FLSA, and was created to protect certain classes of workers from working too many hours, at too low a wage, in poor working conditions. Thus, the Labor Code is state law which is similar to the FLSA. Therefore, Philadelphia respectfully reserve the right to deny coverage on this basis.

**C. <u>No Coverage for Conversion Cause of Action</u>**

Plaintiff's Third Cause of Action for Conversion connotes restitution of ill gotten gains. Restitution is not an insurable damage. *Bank of the West v. Sup. Ct. of Contra Costa County*, 2 Cal.4th 1254, 1260 (Cal. 1992) ("it is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.") <u>Id.</u> at 1266. As such, there can be no coverage for plaintiff's Conversion Cause of Action.

**D. <u>No Coverage For Section 17200 Claims</u>**

The Fourth Cause of Action asserts that LSSI's violations of Labor Code §§ 201 and 202 constitute unfair and unlawful business practices in violation of Section 17200. The FLSA Exclusion expressly precludes coverage for unfair business practices involving Earned Wages.

Further, the Policy's definition of Loss excludes from coverage "matters deemed uninsurable under the law to which this Policy shall be construed." The only non-punitive monetary relief available under Section 17200 is restitution – which is uninsurable under California law. *Bank of the West v. Sup. Ct. of Contra Costa County*, 2 Cal.4th 1254, 1266. As such, there can be no coverage for any relief awarded under Section 17200.

E. **Other Potentially Relevant Policy Provisions**

While Philadelphia believes that the FLSA Exclusion is dispositive of coverage for the *D'Anneo* action, below we identify other potentially relevant exclusions, endorsements and definitions which may operate to otherwise preclude or limit coverage.

Plaintiff seeks restitution and injunctive relief pursuant to Section 17200. As stated previously, restitution is not an insurable loss under California law. Further, the definition of Loss also excludes injunctive relief.

Plaintiff's First Cause of Action seeks statutory penalties under Labor Code § 210. Plaintiff's Second Cause of Action seeks waiting time penalties under Labor Code § 203. The Policy's definition of Loss excludes from coverage "criminal or civil fines or penalties imposed by law." As such, there can be no coverage for statutory penalties.

California Insurance Code § 533 provides, in pertinent part, that "an insurer is not liable for a loss caused by the willful act of the insured." Similarly, California Civil Code § 1668 prohibits as against the policy of the law any contracts "which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent." Accordingly, should it be determined that LSSI's actions were deliberate or willful, California Insurance Code § 533 and California Civil Code § 1668 may limit or preclude coverage.

**RESERVATION OF RIGHTS**

The respective rights and obligations of Philadelphia and LSSI should be considered fully reserved under the Policy and applicable law. Philadelphia's evaluation is based on presently known facts and circumstances. Specification herein of coverage issues and reservations is not a waiver of other coverage rights and defenses which may exist in Philadelphia's favor or which may arise in the future. Philadelphia reserves it right to assert additional coverage or legal defenses as they may be ascertained.

**CONCLUSION**

If you believe Philadelphia's analysis is in any way incorrect or if you have any additional facts which you feel would alter its position, Philadelphia would be pleased to give this matter further consideration. LSSI is entitled to have the California Department of

Insurance review this coverage decision. The address and phone number are:

California Department of Insurance
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357

Please contact us with any questions, or if you wish to discuss this matter further.

Very truly yours,

SEDGWICK, DETERT, MORAN & ARNOLD LLP

Martin J. O'Leary
Erin J. Volkmar

MJO/EJV

CF 071

bcc: Susan A. Shue
PHILADELPHIA INDEMNITY INSURANCE COMPANY
via email only

CF 072

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On August 18, 2008, I served the within document(s):

**DECLARATION OF SUSAN SHUE IN SUPPORT OF MOTION OF DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☐ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

☒ E-MAIL OR ELECTRONIC TRANSMISSION – by transmitting via e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) set forth below. I did not receive,within a reasonable time after the tranmission, any electronic message or other indicating that the transmission was unsuccessful.

Harris I. Steinberg, Esq.
Levine, Steinberg, Miller & Huver
550 West C Street, Suite 1810
San Diego, CA 92101

Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiff
*Lender Support Systems, Inc.*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on August 18, 2008, at San Francisco, California.

Andrea Mackenzie
Andrea Mackenzie

SEDGWICK
DETERT, MORAN & ARNOLD LLP