SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRIAN D. HARRISON Bar No. 157123
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
PHILADELPHIA INDEMNITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDER SUPPORT SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE CO., and DOES I through 20, inclusive,<br><br>Defendants. | CASE NO. 08-CV-0848 WQH (BLM)<br><br>**OPPOSITION OF DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: September 2, 2008<br>TIME: 11:00 a.m.<br>DEPT:: 4<br>JUDGE: Hon. William Q. Hayes |

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION ........ 1

II. STATEMENT OF UNDISPUTED FACTS ........ 1

A. LSSI's Complaint Against Philadelphia ........ 1

B. The EPL Policy Issued by Philadelphia to LSSI ........ 2

C. The D'Anneo Action ........ 5

D. LSSI's Tender of the D'Anneo Action and Philadelphia's Denial of Coverage ........ 6

III. DISCUSSION ........ 7

A. California Law Regarding Contract Interpretation ........ 7

B. LSSI's Argument that the Policy's FLSA Exclusion Is Not Plain, Clear or Conspicuous Is Without Merit and Other Courts Have Held That Similar FLSA Exclusions Are Unambiguous and Enforceable ........ 8

C. There Is No Coverage for the D'Anneo Action Because the Policy Does Not Provide a Duty to Defend and D'Anneo's Complaint for Earned Wages Is Precluded by the FLSA Exclusion ........ 10

1. Coverage Is Precluded by the FLSA Exclusion Because Bonus Money Qualifies as "Wages" ........ 11

2. Coverage for the Labor Code Causes of Action Is Precluded Because of the FLSA Exclusion ........ 13

3. There Is No Coverage for the Conversion Cause of Action ........ 14

4. There Is No Coverage For Business and Professions Code Section 17200 Claims ........ 14

D. Exclusion D Does Not Apply ........ 15

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**PAGE**

### FEDERAL CASES

*Big 5 Corp v. Gulf Underwriters Ins. Co.*, 2003 WL 22127029 ....8

*Farmers Automobile Insurance Association v. St. Paul Mercury Ins. Co.* (7th Cir. 2007) 482 F.3d 976 ....8, 9

*Mitchell v. Robert DeMario Jewelry, Inc.* (S.C. 1960) 361 U.S. 288 ....13

*Payless Shoesource, Inc. v. Travelers Companies, Inc.*, __ F.Supp.2d __, 2008 WL 2995553 ....8, 9, 10

### STATE CASES

*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 10 Cal.Rptr.2d 538 ....7, 14, 15

*County of San Diego v. Ace Prop. & Cas. Ins. Co.* (2005) 37 Cal.4th 406, 33 Cal.Rptr.3d 583 ....7

*Foster Gardner Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 77 Cal.Rptr.2d 107 ....7

*Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206 ....8

*Montrose Chem. Co. of Calif. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 ....7

*National Auto. & Cas. Ins. Co. v. Stewart* (1990) 223 Cal.App.3d 452 ....8

*Suarez v. Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396 ....8

*Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370 ....7

*Ward Gen. Ins. Serv. v. Employers Fire Ins. Co.* (2004) 114 Cal.App.4th 548, 7 Cal.Rptr 3d 844 ....7

# TABLE OF AUTHORITIES
## (Continued)

**PAGE**

## FEDERAL STATUTES

Title 29 U.S.C.A. Chapter 8, sections 201-219 ....6

## STATE STATUTES

California Business & Professions Code § 17200 ....11, 14, 15

Civ. Code § 1636 ....7

Civ. Code § 1638 ....7

Civ. Code § 1639 ....7

Lab. Code § 200 ....4

Lab. Code § 200(a) ....4

Labor Code § 201 ....5, 6, 7

Labor Code § 202 ....5

Labor Code § 203 ....5

## I. INTRODUCTION

This action arises from the proper denial by defendant Philadelphia Indemnity Insurance Company ("Philadelphia") of plaintiff Lender Support Systems, Inc.'s ("LSSI") tender of defense and indemnity for an underlying employment claim. In the underlying action, entitled Sonja D'Anneo v. Lender Support Systems, Inc., et al. (Case No. 37-3007-00064417-CU-OE-CTL) ("D'Anneo Action"), former LSSI employee Sonja D'Anneo filed a complaint ("D'Anneo Complaint") in San Diego County Superior Court against LSSI for unpaid bonuses. Philadelphia provided employment practices liability insurance to LSSI under Private Company Protection Plus Policy No. PHSD222905, effective January 6, 2007 to January 6, 2008 (the "Policy"). Under California law, bonuses constitute "wages," which are not covered under the Policy because of the Fair Labor Standards Act ("FLSA") Exclusion. Accordingly, Philadelphia declined coverage for defense and indemnity.

LSSI's motion for partial summary judgment moves this Court for a determination on the issue of whether the FLSA Exclusion applies to the D'Anneo action. Philadelphia has filed a cross-motion for summary judgment[1] on the same issue - whether the FLSA Exclusion in the Policy issued to LSSI provides coverage for the D'Anneo Action. The facts are not disputed. At issue is a legal determination of whether the FLSA Exclusion applies. LSSI's motion should be denied because the Policy contains an unambiguous exclusion which applies to preclude coverage.

## II. STATEMENT OF UNDISPUTED FACTS

### A. LSSI's Complaint Against Philadelphia

On April 8, 2008, LSSI filed a complaint against Philadelphia for bad faith and declaratory relief. (See Complaint, Request for Judicial Notice in Support of Motion of

[1] LSSI filed its motion for partial summary judgment on July 17, 2008, and the motion is set for hearing on September 2, 2008. Philadelphia filed its motion for summary judgment or, in the alternative, partial summary judgment on August 19, 2008, and the motion is set for hearing on October 6, 2008.

Defendant Philadelphia for Summary Judgment or, in the Alternative, Partial Summary Judgment ("RJN"), Exhibit A @ Docket No.13, Part 8.) The complaint alleges that on or about April 2, 2007, LSSI suffered a compensable loss under the Employment Practices Coverage provided by Philadelphia when it was served with the D'Anneo Complaint. (Complaint, RJN, Ex. A at ¶ 5 @ Docket No.13, Part 8.) In the complaint, LSSI avers that Philadelphia breached its duty of good faith and fair dealing when it allegedly: (a) "failed to make legal defense cost payments to [LSSI] at a time when defendant knew that [LSSI] was entitled to said payments" because the claims in the D'Anneo Action were "expressly covered events"; (b) misrepresented facts and policy provisions when Philadelphia "refused to defend or assist LSSI based on an exclusion that was inapplicable and that was not plain, conspicuous, clear, and unambiguous"; (c) did not make a good faith attempt to effect a settlement of a claim for defense benefits; and (d) made "other acts or omissions of which [LSSI] is presently unaware." (Complaint, RJN, Ex. A at ¶ 7 @ Docket No.13, Part 8.) LSSI further contends that an actual controversy exists between LSSI, on the one hand, and Philadelphia, on the other hand, whether there was an obligation for Philadelphia to defend or to indemnify LSSI against the allegations in the D'Anneo Action, and seeks a declaration of the rights of the parties pursuant to the terms and conditions of the Policy. (Complaint, RJN, Ex. A at ¶¶ 12-14 @ Docket No.13, Part 8.) LSSI seeks a declaration of the rights of the parties under the Policy, and to recover all damages for Philadelphia's alleged failure to provide insurance benefits, general damages, punitive damages, costs of suit and attorneys' fees. (Complaint, RJN, Ex. A at Prayer for Relief, ¶¶ 1-6 @ Docket No.13, Part 8.)

**B. The EPL Policy Issued by Philadelphia to LSSI**

Philadelphia provided employment practices liability insurance to LSSI under the Policy. (See Policy, attached as Exhibit 1 to the Declaration of Susan Shue in Support of Philadelphia's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment[2] (hereinafter

---

[2] Philadelphia cites to the Policy attached as Ex. 1 to the Shue Decl. because it is a complete and accurate copy of the Policy. The policy attached as Exhibit 1 to the Declaration of Harris I. Steinberg in Support of Motion for Partial Summary Judgment ("Harris Decl.") omits the policyholder notices and some of the endorsements.

"Shue Decl.") @ Docket No.13, Parts 3 and 4). The Policy provided limits of $1,000,000, subject to a $25,000 retention per claim. The applicable policy provisions provide in pertinent part:

> PART 2. EMPLOYMENT PRACTICES LIABILITY INSURANCE.
>
> (To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)
>
> I. INSURING AGREEMENT
>
> The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** . . . and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

The Third Party EPLI Exclusion Endorsement, form PI-PRD-43 (09/02), replaces Part 2, Section II. DEFINITIONS, A. **Employment Practice Act** with the following, in pertinent part:

> II. DEFINITIONS
>
> A. **Employment Practice Act** means any actual or alleged:
>
> * * *
>
> 2. breach of a written or oral employment contract or implied employment contract;
>
> 3. employment related misrepresentation;
>
> * * *
>
> 6. wrongful deprivation of a career opportunity;
>
> * * *
>
> 17. violation of any federal, state or local civil rights laws;
>
> and committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or by the **Organization**.

The Amendment of Exclusions Endorsement, form PI-PRD-75 (12/03), replaces Part 2, (**Employment Practices Liability Insurance**), Section III (EXCLUSIONS), item B. with the following:

> III. EXCLUSIONS
>
> The **Underwriter** shall not be liable under this Part 2 to make any payment

for **Loss** in connection with any **Claim** made against the **Insured**:

* * *

for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by … the Fair Labor Standards Act … any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory or common law … provided further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** … including, but not limited to … any unfair business practice claim alleged because of failure to pay **Earned Wages** …. [3]

PART 4. COMMON POLICY DEFINITIONS

* * *

B **Claim** means:

* * *

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

* * *

D. **Defense Costs** means:

1. any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim**, whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter**, in the investigation, adjustment, defense and appeal of a **Claim**, . . . .

* * *

J. **Loss** means:

1. **Damages**;

2. **Defense Costs;**

but **Loss** does not include:

* * *

3. matters deemed uninsurable under the law to which this Policy shall be construed; or

[3] This exclusion is hereinafter referred to as the "FLSA Exclusion".

4. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages;

The Amendment of Exclusions Endorsement, form PI-PRO-75 (12/03), supplements Part 4 (**COMMON POLICY DEFINITIONS**) with the following:

**Earned Wages** means wages or overtime pay for services rendered.

* * *

PART 6. COMMON POLICY CONDITIONS

* * *

III. DEFENSE AND SETTLEMENT

A. The **Insured** and not the **Underwriter** shall have the responsibility to defend any **Claim**. . . .

(Shue Decl., ¶ 3, Ex.1 @ Docket No.13, Parts 3 and 4.)

**C. <u>The D'Anneo Action</u>**

On April 2, 2007, Sonja D'Anneo, a former LSSI employee, filed the <u>D'Anneo</u> Complaint in San Diego County Superior Court setting forth causes of action for (1) failure to pay earned wages in violation of Labor Code §§ 201[4] and 202[5]; (2) claim of waiting time penalties for not paying wages in violation of Labor Code § 203[6]; (3) conversion; and (4) unfair business practices in violation of California Business & Professions Code § 17200. (<u>D'Anneo</u> Complaint, RJN, Ex. B @ Docket No.13, Part 9.)

---

[4] Labor Code § 201 provides, in pertinent part, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

[5] Labor Code § 202 provides, in pertinent part, that "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter[.]"

[6] Labor Code § 203 provides, in pertinent part, that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

The D'Anneo Complaint alleged that LSSI failed or refused to pay her "wages," including bonus money "earned." Specifically, the D'Anneo Complaint contended that she agreed to join LSSI expecting and relying on LSSI's promise to pay her an achievable bonus totaling at least $100,000. (D'Anneo Complaint, RJN, Ex. B at ¶ 5, lines 11-14; ¶ 18, lines 26-27 @ Docket No.13, Part 9.) "LSSI promised to pay Plaintiff $50,000 so long as she performed in a satisfactory manner, and met readily achievable goals that LSSI promised to define at the beginning of her employment" and "promised to pay Plaintiff an additional bonus equal to 10% of any sales generated by Plaintiff, projected to be at least $50,000 of additional bonus money. (D'Anneo Complaint, RJN, Ex. B at ¶ 5, lines 14 – 17; ¶ 18, lines 26-27 @ Docket No.13, Part 9.) The D'Anneo Complaint further alleged that "LSSI had only paid Plaintiff approximately $30,000 of her projected $100,000 bonus money", "that at absolute minimum she should receive the additional $20,000 performance bonus", and that "it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (D'Anneo Complaint, RJN, Ex. B at ¶ 9, lines 10-11 and 13-14; and ¶10, lines 19-20, respectively @ Docket No.13, Part 9.) On May 21, 2007, LSSI filed an answer in the D'Anneo Action. (D'Anneo Answer, RJN, Ex. C @ Docket No.13, Part 10.)

**D. LSSI's Tender of the D'Anneo Action and Philadelphia's Denial of Coverage**

On October 9, 2007, Philadelphia received first notice of the D'Anneo Action from LSSI when it received a two-page report from GAB Robins. (Shue Decl., ¶ 4 @ Docket No.13, Part 3). According to the GAB Robins report, on October 8, 2007 at 7:13 p.m., Jim Carr of LSSI called and reported the claim of Sonja D'Anneo against LSSI. Under the "Injury Description" section of the GAB Robins report, it states: "[a]bove individual is suing Lender Support Systems for bonuses she feels are owed to her." (Shue Decl., ¶ 4, Ex. 2 @ Docket No.13, Parts 3 and 5). On October 9, 2007, claims examiner Susan Shue spoke with Mr. Carr at LSSI and requested a copy of the D'Anneo Complaint. On or around October 12, 2007, LSSI provided a copy of the D'Anneo Complaint to Philadelphia. (Shue Decl., ¶ 5 @ Docket No.13, Part 3). On December 13, 2007, Philadelphia, after a careful view review of the claim, issued a letter to LSSI stating that it had determined that because of the Fair Labor Standards Act ("FLSA") Exclusion, as well

as other policy provisions, coverage for the D'Anneo Complaint was precluded. (Shue Decl., ¶ 5, Ex. 3 @ Docket No.13, Parts 3 and 6) The D'Anneo Action settled for $35,000. In February 2008, the D'Anneo Complaint was dismissed with prejudice. (D'Anneo Dismissal and Notice of Entry, RJN, Ex. D @ Docket No.13, Part 11.)

## III. DISCUSSION

### A. California Law Regarding Contract Interpretation

Although insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. Ward Gen. Ins. Serv. v. Employers Fire Ins. Co. (2004) 114 Cal.App.4th 548, 552, 7 Cal.Rptr 3d 844. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties as expressed by the terms and conditions of the policy. Id. Such intent is to be inferred, if possible, solely from the written provisions of the contract. County of San Diego v. Ace Prop. & Cas. Ins. Co. (2005) 37 Cal. 4th 406, 415, 33 Cal.Rptr.3d 583 (citation omitted); *see also* Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties..."); *see also* Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible..."). If the language is clear and explicit, it governs. Id. (citing Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538. *See also* Civ. Code § 1638.

The rules governing interpretation of an insurance policy require courts to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Waller v. Truck Ins. Exch., Inc. (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370. If the meaning a layperson would ascribe to a contract of insurance language is clear and unambiguous, courts will apply that meaning. Montrose Chem. Co. of Calif. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 666-67, 42 Cal.Rptr.2d 324. A policy provision will only be considered ambiguous when it is capable of two of more constructions, both of which are reasonable. Ward, supra, 114 Cal.App.4th at 552. However, courts will not strain to create an ambiguity where none exists. Waller, supra, 114 Cal.App.4th at 18-19. The fact that a term is not defined in an insurance policy does not make it ambiguous. Foster Gardner Inc. v. National Union Fire Ins. Co.

(1998) 18 Cal.4th 857, 868, 77 Cal.Rptr.2d 107. Whether the language in a contract is ambiguous is a question of law. Suarez v. Life Ins. Co. of North America (1988) 206 Cal.App.3d 1396, 1402.

**B. LSSI's Argument that the Policy's FLSA Exclusion Is Not Plain, Clear or Conspicuous Is Without Merit and Other Courts Have Held That Similar FLSA Exclusions Are Unambiguous and Enforceable**

LSSI's argument that the FLSA Exclusion in not plain, clear or conspicuous is without merit. The Amendment of Exclusions Endorsement, form PI-PRD-75 (12/03), which is listed in the Declarations page of the Policy, explains that item B (the "FLSA Exclusion") set forth therein replaces section III, item B. in Part 2 (**EMPLOYMENT PRACTICES LIABILITY INSURANCE)** of the Policy. Further, the FLSA Exclusion is set forth in its own separate and distinct paragraph, and the language therein is plain and clear that the exclusion applies to the listed statutes and any similar provisions of other federal, state, local or foreign law. In sum, the policy language is clear and unambiguous. Therefore, the interpretation of the provision by a lay witness, such as Mr. Martin, is not relevant or admissible and his declaration should be stricken. *See* Jordan v. Allstate Ins. Co. (2004) 116 Cal.App.4th 1206, 1217 (citing National Auto. & Cas. Ins. Co. v. Stewart (1990) 223 Cal.App.3d 452, 458-459); Suarez v. Life Ins. Co. of North America, supra.

Research of California law does not reveal any published cases that interpret the FLSA Exclusion or similar "FLSA" exclusions.[7] However, in separate actions alleging state labor law violations, the United States District Courts in Kansas and in Illinois have enforced exclusions similar to the FLSA Exclusion set forth in the Policy issued to LSSI, and the Seventh Circuit Court of Appeals affirmed the Illinois District Court's finding that a class action against the insured invoked the policy exclusion for violations of the Fair Labor Standards Act or "other similar provisions of any" state statute. *See* Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 (D. Kan.); Farmers Automobile Insurance

[7] However, the United States District Court , Central District of California did address a similar issue in the unpublished decision Big 5 Corp v. Gulf Underwriters Ins. Co., 2003 WL 22127029.

Association v. St. Paul Mercury Ins. Co. (7th Cir. 2007) 482 F. 3d 976.

In Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 (D. Kan.), a decision issued August 4, 2008, the court granted Travelers' motion for summary judgment on the insured's first cause of action for recovery of unpaid wages and penalties based on a violation of the California Labor Code, the second cause of action for unfair business practices, and the third cause of action for violation of a provision of the California Labor Code governing when an employer is required to pay an employee after the employee's separation from employment. The exclusion at issue in Payless stated:

> A. The Insurer shall not be liable for Loss on account of any Claim made against any Insured:
>
> ....
>
> 3. for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, the Employee Retirement Income Security Act of 1974, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state, or local statutory or common law or any amendments, rules or regulations promulgated under any of the foregoing; provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment on account of the exercise of rights pursuant to any such law, rule or regulation;

*Id.* at *3. The District Court found that this exclusion was not ambiguous, and that "the California wage and hour provisions are "similar" to the FLSA and that they need not be identical to the FLSA in order to be covered by the exclusions." *Id.* at *7.

Further, the District Court found the Seventh Circuit's decision in Farmers Automobile Insurance Association v. St. Paul Mercury Ins. Co. (7th Cir. 2007) 482 F. 3d 976, a case that involved a policy exclusion with identical language to the exclusion in Payless, to be instructive. In the Farmers decision, the only question before the court was whether Illinois' statutory overtime pay provision is "similar" to the FLSA. The Seventh Circuit, in rejecting the argument that the exclusion was vague and could, therefore, not be given effect, explained that the scope of the two laws did not bear on the question of similarity; rather, the purpose of the exclusion was equally applicable to both statutes. *Id.* at 977 (quoting Payless Shoesource, Inc. v. Travelers

Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 at 8*). According to the Farmers court:

> the purpose of the exclusion is to avoid "moral hazard," which, in its most extreme form, is the temptation of an insured to precipitate the event insured against if the insurance goes beyond merely replacing a loss. "It's why an insurer will not insure your house against fire for more than it's worth," and why liability-insurance policies are presumed not to insure against breaches of contract. Insurance against a violation of an overtime law, whether federal or state, would enable the employer to refuse to pay overtime and then invoke coverage so that the cost of overtime would come to rest on to the insurance company. The employer would have violated the overtime law with impunity, unjustly enriching itself by the difference between the overtime wage for the hours in question and the straight wage. No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall.

*Id.* at 978-979 (quoting Payless Shoesource, Inc. v. Travelers Companies, Inc., __ F. Supp. 2d __, 2008 WL 2995553 at 8* (citations omitted).

The FLSA Exclusion in the Policy issued to LSSI has language similar to the language in the exclusions at issue in the Payless and Farmers decisions. In those decisions, the court found the exclusions to be unambiguous and enforceable, and applied such exclusions based on their plain language. Here, the D'Anneo Complaint seeks to recover earned wages and/or sets forth claims based upon actual or alleged violations of California statutory and common laws that are similar to the FLSA and, therefore, the FLSA Exclusion applies.

### C. There Is No Coverage for the D'Anneo Action Because the Policy Does Not Provide a Duty to Defend and D'Anneo's Complaint for Earned Wages Is Precluded by the FLSA Exclusion

First, LSSI's claim for defense costs under a duty to defend theory is without merit because no duty to defend is provided under the Policy issued to LSSI. The Policy contains a provision, which expressly states that it is the duty of the insured, and not the insurer, to defend all claims. (*See* Shue Decl., ¶ 3, Ex.1 @ Docket No.13, Parts 3 and 4.) Thus, LSSI's reliance on "duty to defend" principles and the argument that Philadelphia must reimburse defense costs if there is a "potential" for coverage is misplaced.

Second, there is no coverage because of the FLSA Exclusion. Philadelphia does not dispute that the D'Anneo Action constitutes a Claim (a civil proceeding commenced by the filing of a complaint). "Employment Practice Act" is defined under the Policy to include "breach of a written or oral employment contract or implied employment contract," "employment related

misrepresentation," "wrongful deprivation of a career opportunity," and "violation of any federal, state or local civil rights laws." The allegations in the D'Anneo Complaint arise from Employment Practice Acts. Thus, the Claim falls to Part 2 of the policy.

However, Exclusion B. to Part 2 of the Policy (the FLSA Exclusion) states that Philadelphia shall not be liable to make any payment for Loss in connection with any Claim made against LSSI:

> for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by … the Fair Labor Standards Act … any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory or common law … provided further, however, there is no coverage provided under this policy for any **Claim** related to, arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured(s)** to pay **Earned Wages** (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** … including, but not limited to … any unfair business practice claim alleged because of failure to pay **Earned Wages** ….

(Emphasis added.) Here, the FLSA Exclusion applies because the D'Anneo Complaint seeks to recover earned wages and/or sets forth claims that are based upon actual or alleged violations of sections of the Labor Code, Business & Professions Code § 17200 and common law (conversion) which impose responsibilities, obligations or duties similar to those imposed by the Fair Labor Standards Act ("FLSA").

### 1. Coverage Is Precluded by the FLSA Exclusion Because Bonus Money Qualifies as "Wages"

Section 200 of the California Labor Code provides that "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). Likewise, the California Division of Labor Standards Enforcement offers the following definition of "bonus" in its "Glossary"[8]:

> Money promised to an employee in addition to the monthly salary, hourly wage, commission or piece rate usually due as compensation. Bonuses are in addition to any other remuneration rate and may be predicated on performance

[8] The glossary is available at http://www.dir.ca.gov/dlse/Glossary.asp.

> over and above that which is paid for hours worked, pieces made, or sales completed. . . . Sums earned as bonuses are wages under the definition found in Labor Code Section 200.

In the D'Anneo Compliant, plaintiff alleges that LSSI failed or refused to pay "wages" owed to D'Anneo, including bonus money earned by performing satisfactorily and/or meeting all agreed-to conditions, the bonus money qualifies as "Earned Wages" as defined by the Policy and is precluded from coverage under the FLSA Exclusion.

With respect to the sales bonus, LSSI argues that because D'Anneo does not contend she "earned" the projected $50,000 sales bonus, at least that portion of the bonus does not qualify as Earned Wages as defined by the Policy. LSSI points to the allegation that "it was not fair for LSSI to change her job scope in such a way that she could not earn the projected $50,000 sales bonus she was promised." (D'Anneo Complaint, RJN, Ex. B at ¶9, lines 14-16 @ Docket No.13, Part 9.) However, while the complaint contends that D'Anneo "was promised the opportunity to earn bonus money projected to be at least $100,000 annually for satisfactory performance" it also alleges that during her employment, she "performed all work requested of her in a satisfactory manner." (D'Anneo Complaint, RJN, Ex. B at ¶18, lines 26-27; ¶19, lines 1-2 @ Docket No.13, Part 9.) The D'Anneo Complaint further alleges "she felt it was not fair that she was not getting her sales bonus despite the fact that she had generated a substantial amount of sales[.]" (D'Anneo Complaint, RJN, Ex. B at ¶10, lines 19-20 @ Docket No.13, Part 9). Finally, other than the single reference to the deprivation of an opportunity to earn the sales bonus, the D'Anneo Complaint makes no distinction in the complaint between wages owed under the performance bonus as opposed to the sales bonus.

LSSI attempts to distract the court with the argument that the D'Anneo Complaint seeks to recover damages relating to a "cut in salary" (LSSI memo. of P&A at 6:9-10) or "for a lost opportunity" (LSSI memo. of P&A at 9:25) and that these claims are not a claim for "earned wages" and, therefore, the FLSA Exclusion does not apply. However, the D'Anneo Complaint does not seek a recovery of damages on such basis and, therefore, a hypothetical claim for damages relating to a "cut in salary" or "for a lost opportunity" is not relevant to the

determination of whether the FLSA Exclusions applies in this case.

In sum, D'Anneo alleges that she performed *all work* requested in a satisfactory manner, including generating a substantial amount of sales, and does, in fact, contend that she "earned" both the performance and sales bonuses. (D'Anneo Complaint, RJN, Ex. B at ¶10, lines 19-20; ¶ 18, lines 26-27; ¶ 19, lines 1-2 @ Docket No.13, Part 9). Further, D'Anneo alleges that she could not reach the $100,000 amount alleged in paragraph 18 of the complaint without including both the projected $50,000 performance bonus and the projected $50,000 sales bonus. Therefore, the allegations in the D'Anneo Complaint that LSSI failed and refused to pay her wages, including performance and sales bonus money earned, constitute Earned Wages as defined by the Policy and are precluded from coverage under the FLSA Exclusion.

**2. Coverage for the Labor Code Causes of Action Is Precluded Because of the FLSA Exclusion**

There is no coverage for the first cause of action for failure to pay earned wages in violation of Labor Code §§ 201 and 202 or the second cause of action for waiting time penalties for not paying wages in violation of Labor Code § 203 because the FLSA Exclusion applies. Title 29 U.S.C.A. Chapter 8, sections 201-219, comprise a federal statute known as the Fair Labor Standards Act of 1938 ("FLSA"). The central purpose of the FLSA is to achieve certain minimum labor standards. Mitchell v. Robert DeMario Jewelry, Inc. (S.C. 1960) 361 U.S. 288.

The California Labor Code regulates labor on the state level, including regulation of payment of wages, and is thus similar to the FLSA. However, the Labor Code may at times contain more specific rules and regulations than the FLSA. In practice, the FLSA is a broad statute, and the Labor Code incorporates many of the same regulations as the FLSA, but may offer more protection with respect to minimum wages, overtime wages, and payment of wages. Based on review of the Labor Code as a whole, its general purpose is the same as that of the FLSA - - to achieve minimum labor standards, including regulation of working hours and payment of wages. Although some of the Labor Code sections may provide more specific protection than their FLSA counterparts, or these statutes may at times come to different

conclusions regarding an issue, these two statutes regulate the same subject matter and their goal is the same – regulation of wage and hours. As such, the Labor Code and the FLSA contain "similar" provisions.

The FLSA Exclusion does not state that, to be applicable, state or local statutory provisions at issue must be "the same as" or "identical to" those contained in the FLSA. On the contrary, the language of the FLSA Exclusion states that, to be applicable, state or local statutory provisions need only be "similar" to the FLSA. Because things are similar, and not identical, there will necessarily be some differences when things are similar. Since the Labor Code and the FLSA regulate the same subject matter, they are all "similar" and, therefore, the FLSA Exclusion applies to the first and second causes of action in the D'Anneo Complaint.

**3. There Is No Coverage for the Conversion Cause of Action**

The third cause of action in the D'Anneo Complaint for conversion connotes restitution of ill gotten gains. See D'Anneo Complaint, RJN, Ex. B at ¶¶30-31, lines 11-15 @ Docket No.13, Part 9. Restitution is not an insurable damage. Bank of the West v. Sup. Ct. of Contra Costa County (Cal. 1992) 2 Cal.4th 1254, 1260 ("it is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.") Id. at 1266. Further, the definition of Loss also excludes injunctive relief. As such, there can be no coverage for D'Anneo's conversion cause of action.

**4. There Is No Coverage For Business and Professions Code Section 17200 Claims**

The fourth cause of action in the D'Anneo Complaint asserts that LSSI's violations of Labor Code §§ 201 and 202 constitute unfair and unlawful business practices in violation of California Business and Professions Code § 17200. The FLSA Exclusion expressly precludes coverage for unfair business practices involving Earned Wages and because this cause of action is wholly based upon LSSI's alleged violations of the Labor Code. (See D'Anneo Complaint, RJN, Ex. B at ¶ 37, lines 9-11 @ Docket No.13, Part 9.)

Here, D'Anneo's Section 17200 claim is totally dependant on her allegations against LSSI for its alleged violation of the Labor Code. D'Anneo's Section 17200 would not exist *but*

*for* violations of those allegations. Since the Labor Code violations are precluded from coverage pursuant to the FLSA Exclusion, there can be no coverage for a cause of action directly arising from those excluded claims. Further, the Policy's definition of Loss excludes from coverage "matters deemed uninsurable under the law to which this Policy shall be construed." The only non-punitive monetary relief available under Section 17200 is restitution – which is uninsurable under California law. Bank of the West v. Sup. Ct. of Contra Costa County (Cal. 1992) 2 Cal.4th 1254, 1266. As such, there can be no coverage for any relief awarded under Section 17200.

**D. Exclusion D Does Not Apply**

LSSI contends that, even if Exclusion B (the "FLSA Exclusion) applies, at a minimum it is entitled to reimburse of defense costs under Exception No.2 under Exclusion D. for breach of contract claims. However, in making this argument, LSSI conveniently overlooks the fact that the D'Anneo Complaint does not allege a cause of action for breach of contract. For this reason, Exclusion D does not apply.

**CONCLUSION**

In sum, since the FLSA Exclusion applies to preclude coverage for the D'Anneo Action in its entirety, Philadelphia did not breach the terms of the insurance contract by denying coverage for that action. Consequently, there is no merit to the causes of action for declaratory relief and bad faith in LSSI's complaint because those causes of action are dependent on Philadelphia's alleged breach, which did not occur. Given the clear, unambiguous language contained in the FLSA Exclusion, the court should apply the FLSA Exclusion on its face and hold that coverage is not available for the D'Anneo Action under the Policy because the FLSA Exclusion applies. For these reasons, LSSI's motion for partial summary judgment should be denied.

DATED: August 19, 2008 SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: /s/ Brian D. Harrison
BRIAN D. HARRISON
Attorneys for Defendant
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On August 19, 2008, I served the within document(s):

**OPPOSITION OF DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☐ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

☒ E-MAIL OR ELECTRONIC TRANSMISSION – by transmitting via e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) set forth below. I did not receive, within a reasonable time after the transmission, any electronic message or other indicating that the transmission was unsuccessful.

Harris I. Steinberg, Esq.
Levine, Steinberg, Miller & Huver
550 West C Street, Suite 1810
San Diego, CA 92101
Telephone: (619) 231-9449
Facsimile: (619) 231-8638

Attorneys for Plaintiff
*Lender Support Systems, Inc.*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on August 19, 2008, at San Francisco, California.

/s/ Brian D. Harrison
Brian D. Harrison