HARRIS I. STEINBERG (Bar No. 89288)
LEVINE, STEINBERG, MILLER & HUVER
550 W. "C" Street, Suite 1810
San Diego, California 92101
Phone:(619) 231-9449
Fax: (619)231-8638

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDER SUPPORT SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY and DOES 1 - 20, Inclusive,<br><br>Defendant. | CASE NO. 08cv0848-WQH(BLM)<br><br>PLAINTIFF'S **REPLY** MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>DATE: September 2, 2008<br>TIME: 11:00 a.m. (Oral Argument)<br>CRTRM: 4 - Hon. William Q. Hayes |

## I.

## NO FLSA CLAIM WAS ASSERTED.

Nowhere in Philadelphia Indemnity Insurance Company's (PIIC) Opposition is there any reference to any allegation in the D'Anneo complaint that PIIC contends is a Fair Labor Standards Act (FLSA) violation. Ms. D'Anneo never made a 29 USCA §§201 - 209 FLSA claim for:

1. Minimum Wage Violation
2. Overtime Wages
3. Hours Worked Violation
4. Record Keeping Violation; or
5. Youth Employment Violations

Certainly if she had, PIIC and its attorneys would have pointed it out in its denial letter and in its Opposition. They haven't because there was no FLSA violation or claim and, accordingly, Exclusion B doesn't/didn't apply.

**II.**

**NO CALIFORNIA LABOR CODE §1178, et. seq. VIOLATION WAS ALLEGED.**

California Labor Code §1178, et. seq., covers the topics of "minimum wage, overtime wages and hours worked." Again, PIIC and its attorneys point to no allegation in the D'Anneo complaint as falling within the California Labor Code "equivalent" of FLSA. There was no FLSA "similar" claim made by Ms. D'Anneo. Certainly, Labor Code §§201, 202 and 203 are not "similar" FLSA claims. PIIC tries to ignore Labor Code §1178, et seq., away by not even addressing it in its Opposition.

The lack of any "minimum wage, overtime or hours worked" claim under state or federal law (FLSA) renders PIIC's reliance on Exclusion B pointless. There simply never was an FLSA claim or any "similar" state law claim. A decision on coverage must be based on a review of the allegations in the complaint (Exhibit 2) and there is no FLSA on "similar" state law FLSA claim.

PIIC's argument that any claim brought under the California Labor Code is an FLSA "similar" violation defies common sense and violates the express terms of the policy. There are over 9,000 sections to the California Labor Code and according to PIIC they can deny a covered EPL claim based on Exclusion B (FLSA) any time a state labor code is allegedly violated, even if it is not a "similar" minimum wage, overtime wage, hours worked, record keeping violation or youth employment violation. The policy simply doesn't say that and no reasonable insured would expect it. If PIIC intended this FLSA exclusion to apply to "every" labor code claim, they would not have used the term "similar" when referring to FLSA. PIIC's interpretation is an expansion of the word "similar" that is absurd. Labor Code §§201 - 203 aren't even remotely similar to FLSA. It is basic insurance law, exclusions are subject to close scrutiny and "construed strongly against the insurer and liberally in favor of the insured." See, Pepper Industries v. Home Ins., 67

Cal.App.3d 1012, 1018 (1977). PIIC's interpretation treats the word "similar" as if it wasn't there at all.

**III.**

**LABOR CODE §§201, 202 AND 203 ONLY ADDRESS THE TIME PAYMENT IS DUE.**

Labor Code §201 requires wages that are undisputed to be paid at termination. Similarly,§202 requires payment of undisputed wages within 72 hours of an employee resignation. Section 203 sets forth the penalty for delaying payment. Each of these codes deal with the "timing" of when payment is owed, not FLSA issues.

As noted in defendant's opposition, LSSI denied and disputed Ms. D'Anneo's claims and filed an Answer denying the allegations. (See defendant's RJN, Exhibit C @Docket No. 13, Part 10.) PIIC cannot argue that there was any undisputed claim for earned wages. There was only a dispute involving an alleged breach of contract and alleged damages, which included alleged wages and income Ms. D'Anneo claimed, as well as non-earned income she allegedly lost by giving up an earlier job with a different employer. (D'Anneo Complaint, plaintiff's Exh. 2-38, paragraph 6.) These are not FLSA claims.

**IV.**

**PIIC HAS NO SUPPORTIVE CASE AUTHORITY.**

PIIC concedes at page 8 of its Opposition that it has no California authority supporting its interpretation of Exclusion B, or that every alleged state Labor Code violation is "similar" to FLSA.

Defendant's reliance on its out of state authorities is also without basis. Payless Shoe Source Inc. v. Travelers, __F.Supp.2d__ , 2008 WL 2995553 (D. Kan.) was based on a class action claim in which employees of Payless were "improperly required and/or allowed to work off the clock without compensation." Payless did not dispute that it was charged with minimum wage, hours worked violations or record keeping violations that would have violated FLSA. Instead, Payless argued that the word "similar" was "ambiguous," headnote 5.

LSSI makes no assertion that the word "similar" is ambiguous. LSSI contends that FLSA "similar" violations does not include every conceivable Labor Code §1-9000 violation. It must be one of the 5 similar categories FLSA actually covers. (See, plaintiff's Exhibit 4-53.)

PIIC's reliance on Big 5 Corp v. Gulf Underwriters, __F.Supp.2d__, 2008 WL 22127029 (C.D. Cal.) is also misplaced. It involved "Mosely lawsuit, unpaid overtime wages." Farmers Automobile v. St. Paul Mercury, 482 F.3d 976 also involved an "overtime" statute:

> The Fair Labor Standards Act is of course the federal minimum wage and overtime pay law, and so the question is whether Illinois's statutory overtime pay provision is "similar." The district judge answered yes and granted summary judgment for St. Paul. Farmers has appealed. The question of similarity is one of contract interpretation to be answered, the parties agree, under Illinois law.

The court rejected Farmer's argument that "similar" is vague and found the state overtime claim was "similar" to FLSA. PIIC offers no evidence of any state overtime or minimum wage claims by Ms. D'Anneo. There weren't any and these cases have no relevance here and PIIC knows it.

**V.**

**NON-EARNED WAGES WERE CLAIMED.**

The D'Anneo complaint clearly asserted breach of contract claims against LSSI regardless of how they were titled. The allegations of the complaint control over the drafters titles. See, Gray v. Zurich Ins., 65 Cal.2d 263 at 276 - 277 (1964).

California Courts have long held that even if only one claim is potentially covered, the insurer must defend the entire action:

> Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. (*Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 476 P.2d 825; *Republic Indemnity Co. v. Superior Court* (1990) 224 Cal.App.3d 492, 498, 273 Cal.Rptr. 331; *California Union Ins. Co. v. Club Aquarius* (1980) 113 Cal.App.3d 243, 248, 169 Cal.Rptr. 685.) (Horace Mann has not attempted to establish such an allocation.) Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 607, 222 Cal.Rptr. 276.) (Emphasis added.)
>
> Horace Mann Ins. v. Barbara B.
> 4 Cal.4th 1076, 1081 (1993)

The existence of breach of contract claims, etc., which defendant concedes were covered, and covered damages (earnings lost from a prior position) required both a defense and indemnity. Moreover, defendant's arguments regarding the Conversion and Business and Profession Code claims is of no consequence. PIIC was obligated to defend all the claims per Horace Mann. The Conversion and Business and Profession claims each "incorporated" the same allegations of the first three causes of action. Again, the titles are irrelevant if the allegations raise covered claims, a point PIIC concedes at p. 10. PIIC's only contention is that "coverage" is excluded due to the FLSA exclusion, but for the exclusion they owe coverage to LSSI. Exclusion B doesn't apply.

## VI.

## EXCLUSION D DOES APPLY.

PIIC tries to escape from the promise of "**defense coverage**" in Exclusion D by asserting that "the D'Anneo Complaint does not allege a cause of action for breach of contract." Opposition p. 15.

This is complete nonsense. How would Ms. D'Anneo ever be owed future wages or future bonus money if she did not have a contract and a claim for breach of contract? PIIC has admitted in its Opposition that the D'Anneo Complaint asserts a covered breach of a written or oral employment contract:

> Philadelphia does not dispute that the D'Anneo Action constitutes a Claim (a civil proceeding commenced by the filing of a complaint). "Employment Practice Act" is defined under the Policy to include "breach of a written or oral employment contract or implied employment contract," . . . (Emphasis added.)
>
> Opposition, p. 10, lines 27-28.

PIIC has spun its excuses so far that it has lost track of reality. It concedes a covered EPL "breach of contract" claim exists, but then claims Exclusion D's promise of defense coverage has not been met because no "breach of contract" claim was made by Ms. D'Anneo. (Opposition, p. 15.) PIIC's arguments are simply disingenuous and evidence of bad faith claims practices. Exclusion D is a "give back" of "defense coverage" and should be enforced. See, National Union v. Lynette C., 228 Cal.App.3d 1073, 1082 (1991).

///

///

**VII.**

**PIIC REFUSES TO EXPLAIN "SERVICES RENDERED."**

PIIC relies on an "Exclusion B" for Earned Wages which is defined as "wages or overtime pay for services rendered." FLSA Exclusion B. PIIC ignores the fact that Ms. D'Anneo made various damage claims. She didn't make a claim for "overtime" pay. She claimed she lost earnings because she gave up an earlier job and took a "pay cut." (D'Anneo Complaint, Exh. 2, ¶6) This alleged loss would not be for "services rendered," rather it would be a reliance damage if there was a breach of contract. The bonus amounts "she could not earn" is certainly not for a "services rendered," only a damage she might have earned. (Exh. 2, ¶8.) PIIC is simply distorting the terms of the exclusion to try and get out of paying a claim it knows to be covered and not excluded.

**VIII.**

**THE POLICY AGREES TO PAY DEFENSE COSTS.**

As noted above, the "give back" in Exclusion D expressly provides for "**Defense Costs**" to be paid on a breach of contract EPL claim. **Defense Costs** are defined in Exhibit 1-24 as:

> 1. Any reasonable and necessary legal fees and expenses incurred in the defense of a Claim, whether by the Insured with the Underwriter's consent or directly by the Underwriter, in the investigation, adjustment, defense and appeal of a Claim, except that Defense Costs shall not include: (Emphasis added.)

The policy further stipulates that "the Insured shall have the right, as soon as practicable after a claim is first made, to tender the defense of such claim to the Underwriter . . . the Underwriter shall undertake and manage the defense of such claim, even if such claim is groundless, false or fraudulent." (Policy, Exhibit 1-29.) PIIC's assertion that it had no duty to defend is a gross misrepresentation of the policy terms.

**IX.**

**CONCLUSION.**

PIIC either knows very little about its own policy or it is intentionally misleading this court regarding its FLSA Exclusion and its obligation to provide defense coverage. The policy, in very broad language, promised EPL coverage for breach of contract, misrepresentation and negligent

reassignment, etc., claims. The FLSA Exclusion B PIIC relies upon has no application to LSSI's claim and never did apply. Exclusion D expressly "gave back" defense costs on breach of contract claims, which PIIC as the underwriter agreed to assume directly.

LSSI asks this Court to put a stop to PIIC's games and enter a finding, as a matter of law, that defendant's FLSA Exclusion B is not applicable and that no FLSA or similar state law claim was raised in the D'Anneo Complaint.

Respectfully submitted,

DATED: August 25, 2008

LEVINE, STEINBERG, MILLER & HUVER

By: /s/ Harris I. Steinberg
HARRIS I. STEINBERG
Attorneys for Plaintiff, Lender Support Systems, Inc.